SIXTH DIVISION

JANUARY 15, 1999

No. 1-97-4645

LARRY KARCHMAR, LTD., ) APPEAL FROM THE

) CIRCUIT COURT

Plaintiff-Appellant, ) OF COOK COUNTY.

)

v. )

)

BERNARD R. NEVORAL, Individually, )

and BERNARD R. NEVORAL & ASSOCIATES, ) HONORABLE

) PHILIP BRONSTEIN,

Defendants-Appellees. ) JUDGE PRESIDING. 

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Larry Karchmar (Karchmar) filed an action against defendants, Bernard R. Nevoral and Bernard R. Nevoral & Associate (Nevoral), for breach of fiduciary duty and tortious interference with economic advantage, in connection with a attorney fee-sharing agreement relevant to the representation of Ronald Marshall.
(footnote: 1)  The trial court granted summary judgment in favor of Nevoral on both claims, and Karchmar appealed.  On appeal, Karchmar contends that genuine issues of material fact exist as to whether Nevoral breached a fiduciary duty owed to Karchmar.  For the following reasons, we reverse and remand this matter to the trial court.

BACKGROUND

I.  CHRONOLOGY

The record reveals the following relevant chronology of events:  

1980: Marshall retains Karchmar; Karchmar files five count com­

plaint.

June 18, 1981: Marshall enters into attorney-client agreement with Karchmar for 45% of recovery and/or settle­ment, which includes provi­sion for the engage­ment of co-counsel at no additional cost to Mar­

shall.

October 20, 1981: Karchmar retains Nevoral as co-counsel; Karch­mar and Nevoral enter into oral agreement to split any fees earned 50/50. 

September 27, 1988: Marshall settles with one defendant; Nevoral pays Karchmar $131,000, representing 50% of the fee per oral agreement.

May 30, 1989: Karchmar and Nevoral enter into 
written
 agree­ment to split fees 60/40 in favor of Nevoral for settlement prior to trial; two-thirds to one-third  in favor of Nevoral if recovery ob­tained by verdict or settlement after trial.

July 1989: Jury awards Marshall $8.2 million.

September 1, 1989: Marshall, Karchmar, Nevoral and Clausen Miller enter into fee agree­ment covering defendants' appeal of verdict.

June 30, 1992: Verdict reversed.  
Marshall v. Taylor-Wharton Co.
, 234 Ill. App. 3d 596 (1992).

September 30, 1992: Rehearing denied.

December 2, 1992: P.L.A. denied by supreme court.

February 5, 1993: Marshall enters into "Fee Agreement" with Nevoral,  exclud­ing Karchmar.

March 3, 1993: Marshall's case settles for $3.5 million (less than 90 days after supreme court denies P.L.A.

II.  FACTS

In 1980, Ronald Marshall retained Karchmar to file a personal injury claim, after being rendered a quadriplegic in 1978 when a tractor-trailer he was driving turned over.  On June 18, 1981, Marshall signed a written attorney agreement which allowed Karchmar: 

"* * *to engage the services of any attorney, as co-counsel, that he deems necessary or appropriate which has expertise in the field of products liability in order to assist him in the handling of my mat­ter.  That no additional fee shall be paid to Larry Karch­mar or additional co-counsel except as provided here­in."  

Karchmar subsequently referred the matter to Nevoral, after entering into an oral agreement to apportion legal fees on a 50/50 basis.  In September 1988, Marshall recovered from one defen

dant, and Nevoral paid Karchmar $131,000.

In May 1989, Karchmar agreed to modify the oral agreement for joint representation at Nevoral's request to a two-thirds/one-third fee agreement in favor of Nevoral.  Nevoral reduced this modification to writing.  In June 1989, a jury awarded Marshall a judgment in the amount of $8.2 million.  The defendants appealed, and Marshall, Nevoral, Karchmar and James Ferrini of the law firm of Clausen Miller Gorman Caffrey and Witous (Clausen Miller), entered into an agreement to jointly represent Marshall on the appeal and divide the fees derived from a settle

ment or judgment.  In June 1992, this court reversed the jury verdict and remanded Marshall's case for a new trial.
(footnote: 2)  In September 1992, Marshall engaged Clausen Miller to file a petition for leave to appeal in the Illinois supreme court.
(footnote: 3)
Settlement discussions resumed around December 1992, and Marshall received an offer of just over $1 million, which he rejected.  On February 5, 1993, Marshall signed a new engage­ment agreement with Nevoral, renouncing all prior fee agreements, as follows:.  "The verdict of Eight Million two hundred thousand dollars in the matter entitled 
Ronald Marshall v. Taylor-Wharton, A Divi­sion of Harsco Corpora­tion
, having been reversed and remanded for new trial, [sic] by the Appellate Court of Illinois, First Dis­trict, Fifth Division, and the Illinois Supreme Court having denied the Petition for Leave to Appeal, it is  UNDERSTOOD and AGREED as follows:

Since no monies were recovered from that verdict, all fee agree­

ments predating this agreement are null and void and this agree­ment supersedes all others." 

The agreement further provided that Marshall would pay Nevoral 40% of any amount recovered, and that any claims arising for fees and expenses incurred by Karchmar were "to be resolved by Nevoral and are not the responsibility of Ronald F. Marshall."

On March 3, 1993, Marshall's case settled for $3,500,000.  Nevoral received the entire attorney fee.

In October 1994, Karchmar filed an action for breach of contract and fiduciary duty against Nevoral to recover his share of the fees obtained in the settlement of March 1993.  Karchmar later dropped his breach of contract claim.

In an affidavit dated December 10, 1994, Marshall stated "On June 30, 1992, the judgment of the trial court was reversed by the First District Court of Appeals.  At that time, I terminated any relationship with Larry Karchmar."

At his discovery deposition, Marshall testified that he last spoke to Karchmar  regarding his case in 1984 or 1985, that he did not communicate with Karchmar during the trial, and that Karchmar was not involved in the appeal.  Marshall stated that after he learned that his case was reversed in 1992, he "was very perturbed and  I fired all my lawyers."  Marshall admitted, however, that he never talked to Karchmar and did not remember whether or not he wrote Karchmar a letter.  Subsequently, Nevoral called Marshall and suggested that he try to appeal to the Illinois supreme court, but Marshall stated that he never heard anything from Karchmar.  Marshall then hired Nevoral and signed a new representation and fee agreement with him on February 5, 1993.  Marshall stated that it was not his intent that Karchmar was to be paid any portion of any settlement obtained thereafter.

Karchmar testified that in July 1993, he heard from a third party that the case had settled, and that he called Nevoral to inquire about the settlement and his fees.  Nevoral responded, "you don't deserve any fee in this case.  He fired you."  Karchmar responded that Marshall never informed him that he was fired, and then the conversation "got a little heated."  Karchmar testified that he was never fired by Marshall, nor did he get any indica­tion that Marshall was unhappy with his representation. 

Nevoral testified that Marshall fired Karchmar.  Nevoral stated that he thought he received a copy of "what looked like a letter with the signature of Ron Marshall,"  which "basically said that Mr. Karchmar's services were not longer needed or something like that and that he was to do nothing at all.  He was fired or something.  I don't know the exact words."  Nevoral further testified he made no effort to modify or terminate his fee agreement with Karchmar, that he did not personally notify Karchmar of the termination, and that he had no knowledge whether Karchmar received the termination letter from Marshall.

Following a hearing on September 30, 1996, the trial court granted summary judgment in favor of Nevoral.  Karchmar subsequently amended his complaint to add a count for tortious interference with prospective economic advantage and filed a motion to vacate the prior order of summary judgment.  On November 19, 1997, the trial court entered an order denying both of Karchmar's motions.  This timely appeal followed.

OPINION

On appeal, Karchmar contends that the trial court erred in granting summary judgment in favor of Nevoral on Karchmar's claims of breach of fiduciary duty and tortious interfer­ence with business contract.  

In summary judgment cases, the reviewing court conducts a 
de novo
 review of the evidence.  The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill.2d 107, 113, 649 N.E.2d 1323 (1995).  If reasonable persons could draw different inferenc­es from undisputed facts, summary judgment should be denied.  
Smith v. Armor Plus Co
., 248 Ill.App.3d 831, 617 N.E.2d 1346 (1993).  Although "the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation omitted], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations omitted.]"  
Purtill v. Hess
, 111 Ill. 229, 240, 489 N.E.2d 867 (1986). Thus, summary judgment is proper if and only if pleadings, depositions, admissions, affidavits, and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  
Smith v. Tri-R Vending
, 249 Ill. App. 3d 654, 619 N.E.2d 172 (1993).

Karchmar first contends that his agreement to share fees created a joint venture to represent Marshall and that this joint venture created a fiduciary duty between Karchmar and Nevoral.

An agreement between two attorneys to share fees creates a joint venture and therefore a fiduciary duty of honesty and good faith to disclose to each other all matters affecting their joint representation.  
Holstein v. Grossman
, 246 Ill. App. 3d 719, 616 N.E.2d 1224 (1993).  At a minimum, a fiduciary owes an obligation to deal honestly and fairly with his partner.  
Dowd & Dowd, Ltd. v. Gleason
,  284 Ill. App. 3d 915, 672 N.E.2d 854 (1996),  
aff'd in part, rev'd in part
, 
cause remanded
, 181 Ill. 2d 460, 693 N.E.2d 358 (1998).  This duty continues until the profits of the joint venture are distributed.  
Herst v. Chark
, 219 Ill. App. 3d 690, 579 N.E.2d 990 (1991). 

The relationship between joint venturers is governed by partnership law.  When,  for example, a partner leaves a firm, the partnership is automatically dissolved, but not terminated.  805 ILCS 205/29, 205/30 (West 1996).  This state has recognized that pretermin­ation solicitation of clients by members of an existing firm for the benefit of a new firm rises to a breach of fiduciary duty.  
Dowd
, 181 Ill. 2d 460 (citing 
Vowell & Meehhiem, P.C. v. Beddow, Erben & Bowen, P.A
., 679 So.2d 637, 639 (Ala. 1996); 
In re Silverberg
, 81 A.D. 2d 640, 641, 438 N.Y.S.2d 143, 144 (1981)).  In 
Dowd
, our supreme court set forth illustrations of a breach of fiduciary duty as follows: 

"secretly attempting to lure firm clients (even those the partner has brought into the firm and personally represented) to the new associ­

ation, lying to clients about their rights with respect to the choice of counsel, lying to partners about plans to leave, and abandoning the firm on short notice (taking clients and files) would not be consis­

tent with a partner's fiduciary duties."  
Dowd
, 181 Ill. 2d at 477-78 (citing 
Graubard Mollen Dannett & Horowitz v. Mosko­vitz
, 86 N.Y. 2d 112, 112-21, 629 N.Y.S.2d 1009, 1013-14, 653 N.E.2d 1179, 1183-84).

In 
Dowd
, the plaintiff, a law firm, brought an action against two of its former members and their new law firm for 
inter alia
, breach of fiduciary duty and tortious interference with contractual relations.  The plaintiff alleged that the defendants conspired to improperly obtain a client from the firm for their new venture.  The trial court denied the defendants' motion for summary judgment on plaintiff's claim for breach of fiduciary duty, and certified a question of law to the appellate court. On appeal, this court held that plaintiff had stated a cause of action for breach of fiduciary duty, based on evidence of the defendants' pretermina­tion activities.  

On further appeal, our supreme court determined that unresolved factual questions remained as to whether the defendants obtained a certain client prior to their departure from the firm, and remanded the case to the trial court to examine the factual disputes relevant to the determination of whether the defendants breached their fiduciary duty.  
Dowd
, 181 Ill. 2d at 477.  

Karchmar argues that the trial court similarly erred in granting summary judgment in favor of Nevoral, in that the court failed to draw all reasonable inferences in his favor.  Karchmar points to Nevoral's deposition testimony that Marshall fired Karchmar after Marshall's judgment was reversed on appeal.  However, the record  shows that in February 1993, approxi­mately 60 days after denial of the P.L.A., Nevoral entered into a written agreement with Marshall for sole representation.  Settlement followed shortly thereafter in March 1993.  Karchmar argues that it is a reasonable inference that Nevoral and Marshall spoke about this new agreement prior to signing the written document, and that Nevoral spoke to Marshall about Karchmar, especially in light of the fact that the fee agreement includes a provision for any claim that Karchmar may have for fees.

Nevoral responds that an attorney who is discharged prior to any settlement loses all rights to claim fees based upon any fee-sharing agreement.  
Anderson v. Anchor Organiza­tion for Health Maintenance
, 274 Ill. App. 3d 1001, 654 N.E.2d 675 (1995); 
Hofreiter v. Leigh
, 124 Ill. App. 3d 1052, 465 N.E.2d 110 (1984).

However, the record does not reveal that Nevoral's right is clear and free from doubt, especially regarding Karchmar's alleged "firing" by Marshall.  As in 
Dowd
, there appear to remain unresolved questions about the nature of the agreement of February 5, 1993, between Marshall and Nevoral, in light of the prior and long-standing agreement between Karchmar and Nevoral.

Karchmar further contends that the trial court erred in entering summary judgment in favor of Nevoral on his claim for tortious interference with prospective economic advantage.

An action for tortious interference with a contract terminable at will is classified as one for intentional interference with prospective economic advantage.  See 
Fellhauer v. Geneva
, 142 Ill.2d 495, 510, 568 N.E.2d 870 (1991).  To prevail in such an action, a plain­tiff must plead and prove:  "(1) his reasonable expectation of entering into a valid business relationship;  (2) the defendant's knowledge of the plaintiff's expectancy;  (3) pur­poseful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship;  and (4) damages to the plaintiff resulting from such inter­ference."  
Anderson
, 274 Ill.App.3d 1001 at 1013 (citing 
Fellhauer
, 142 Ill.2d at 511, 154 Ill.Dec. 649, 568 N.E.2d 870).  Nevoral disputed only the first and third elements of tortious interference.

Karchmar argues that he had a reasonable expectation to any fees recovered in connection with his representation of Marshall.  The record shows that when Karchmar first contracted with Marshall, he filed a lawsuit, retained an expert, and initiated discovery.   Karchmar participated directly in representation duties when Karchmar initially engaged Nevoral.
(footnote: 4)  

The record does not reveal that Karchmar ever withdrew his representation of Marshall, and there exists some doubt as to whether Karchmar was actually discharged by Marshall.  In fact, in the record of the proceedings of November 9, 1997, the trial court admitted that a factual issue remains as to whether Karchmar and Marshall had a continuing relationship.  Moreover, the timing of Nevoral's new agreement with Marshall and the $3.5 million settlement may indicate a purposeful interference on Nevoral's part.  The record strongly suggests that Nevoral may have decided to reshuffle the deck effectively dealing Karchmar out of the case.  In light of the unresolved facts, we find that entry of summary judgment in favor of Nevoral was improper.  For these reasons, we therefore reverse the judgment of the trial court, and remand this matter for a trial on the disputed issues.

Reversed and remanded.

BUCKLEY, J., and ZWICK, J., concur.

FOOTNOTES
1:     
Marshall is not a party to this appeal.

2:     
The details of Marshall's action are reported in 
Marshall v. Taylor-Wharton Company
, 234 Ill. App. 3d 596, 599 N.E.2d  1015 (1992).

3:     
The supreme court denied the P.L.A. in December 1992.

4:     
The fee-sharing agreement between Karchmar and Nevoral fully complied with Rule 1.5 of the Illinois Rules of Professional Conduct which provides in pertinent part:

"(g)  A division of fees shall be made in proportion to the ser­vices performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and 

(1)  the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and

(2)  the referring lawyer agrees to assume the same legal respon­

sibility for the performance of the services in question as would a partner of the receiving lawyer.

* * *

(i)  For purposes of Rule 1.5 'economic benefit' shall include:

* * * 

(3)  an established practice of referrals to and from or from and to the receiv­ing lawyer and the referring lawyer."  RPC Rule 1.5(g), (i).