THIRD DIVISION

JUNE 29, 2001

No. 1-00-2517

ABBEY FISHMAN ROMANEK, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant,
 ) Cook County.

)

v.
 )

)

MICHAEL P. CONNELLY, JOHN L. )

SCHROEDER, THOMAS F. TOBIN, RAYMOND )

E. STACHNIK, EUGENE S. KRAUSE, DANIEL )

MICHAEL P. HANNIGAN, BRANDT MADSEN and )

MARY LISA KAMINS, individually and as )

the general partners of CONNELLY & )

SCHROEDER, a law firm, ) Honorable

) James F. Henry,

Defendants-Appellees.
 ) Judge Presiding.

JUDGE CERDA delivered the opinion of the court:

Plaintiff, Abbey Fishman Romanek, appeals the order of the circuit court dismissing her second amended complaint with prejudice, pursuant to sections 2-615(a) and 2-619(a)(9) of the Civil Practice Act (Act) (735 ILCS 5/2-615(a), 5/619(a)(9) (West 1998)), against defendants, Michael Connelly, John Schroeder, Thomas Tobin, Raymond Stachnik, Eugene Kraus, Daniel Konicek, Michael Hannigan, Brandt Madsen and Mary Lisa Kamins, individually and as general partners of defendant law firm Connelly & Schroeder (collectively referred to hereinafter as "Connelly & Schroeder"), for breach of contract, breach of fiduciary duty and intentional interference with prospective economic advantage.

Plaintiff, an attorney, is a former member of Connelly & Schroeder.  During her employment, she brought in a contingent fee case through a lawyer she knew.  When she left the firm, there was an agreement for plaintiff to receive a portion of any fee generated by the referral case.  The principal issue in this case is whether the parties' agreement to share in the contingent fee recovered in the referral case is enforceable under Rule 1.5 of the Rules of Professional Conduct ("RPC").

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND

The following facts are derived from the well-pleaded facts of plaintiff's second-amended complaint and the reasonable inferences drawn therefrom, which for purposes of this appeal must be accepted as true (
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 184, 680 N.E.2d 265, 268 (1998)), as well as other record materials properly before us on this appeal.

From October 1995 to August 1998, plaintiff was an associate member of the Chicago law firm of Connelly & Schroeder.  At some point during that time period, Connelly & Schroeder received, through plaintiff, litigation between Thunderhead Beverages Inc. and Dana Plastics
, which had been referred to plaintiff by a personal acquaintance and attorney in Cincinnati, Ohio.  Thunderhead ultimately retained Connelly & Schroeder to represent it, on a contingency fee basis, in the litigation with Dana Plastics.  Thunderhead also retained the law firm to represent it in other matters in which it was involved at the time.  In addition to bringing the case to the law firm, plaintiff provided some services on Thunderhead's behalf at the inception of the Dana Plastics case.

Plaintiff subsequently left Connelly & Schroeder in August 1998 and, pursuant to an oral separation agreement, was allowed to take certain medical insurance cases she was handling at the time.  In addition to outlining the terms of plaintiff's departure from the law firm, the separation agreement additionally contained an alleged "fee sharing agreement" arranged between plaintiff and two of the firm's partners, Michael Connelly and Daniel Konicek.  According to the amended complaint, plaintiff intended to take the Dana Plastics case and all other Thunderhead matters with her.  When presumably learning of plaintiff's intentions, Connelly allegedly stated to plaintiff that the law firm "would like to keep the Thunderhead
 cases and *** [that it would] give [her] a referral fee if [she] agree[d] to leave the cases" with it.  Konicek similarly asked plaintiff to leave all Thunderhead matters in exchange for the payment of a fee.  The record indicates that the firm's payment was to be made solely from the contingency fee generated from the Dana Plastics matter.
  Plaintiff accepted the foregoing offers and made no attempt to take any Thunderhead cases when she left the firm's employment.

The amended complaint does not identify the particular terms of the parties "fee sharing" arrangement.  For instance, the complaint does not identify the amount and basis of the fee to be paid plaintiff.  The only contractual provision specified is that Connelly & Schroeder had the obligation to "either *** obtain or *** make a good faith attempt to obtain the written consent of the client, Thunderhead, to the *** fee sharing agreement."  Connelly & Schroeder has allegedly never made an attempt to fulfill its obligation.

In either late 1998 or early 1999, Connelly & Schroeder secured a $200,000 settlement of the Dana Plastics litigation on Thunderhead's behalf, pursuant to which the firm collected a fee of $66,666.67.  Connelly & Schroeder has never paid plaintiff any portion of that recovered fee.

Count I of the amended complaint charges Connelly & Schroeder with breach of contract, alleging that the firm has failed to adhere to the "fee sharing" provision of the parties' separation agreement by (1) failing and refusing to make any attempt to obtain the written consent of Thunderhead and (2) "refusing to pay the plaintiff a referral fee on the Thunderhead case."  Count II alleges that the foregoing omissions and failures on the part of Connelly & Schroeder constitute a breach of its fiduciary obligations toward plaintiff as a joint venturer in their dual representation of Thunderhead in the Dana Plastics litigation.  Finally, in count III, Connelly & Schroeder is alleged to have intentionally interfered with the prospective economic relationship plaintiff expected to have forged with Thunderhead upon her departure from the firm.

ANALYSIS

A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint whereas a section 2-619 motion raises defects or defenses that negate plaintiff's cause of action completely or refute crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific fact.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996).  Motions filed under either section admit all well-pleaded facts together with all reasonable inferences drawn therefrom.  
Lawson
, 278 Ill. App. 3d 634, 662 N.E.2d at 1382.  Conclusions of law or conclusions of fact not supported by allegations of specific fact, however, are not admitted.  
Lawson
, 278 Ill. App. 3d 634, 662 N.E.2d at 1382.  In ruling on either motion, all pleadings and supporting documents are construed in a light most favorable to the nonmoving party.  
Chicago Flood Litigation
, 176 Ill. 2d at 184, 680 N.E.2d at 268.

The question presented by a motion under section 2-615 is whether the complaint alleges sufficient facts entitling plaintiff to relief.  Where facts alleged fail to support the asserted cause of action, the motion should be granted and the claim dismissed.  
Chicago Flood Litigation
, 176 Ill. 2d at 184, 680 N.E.2d at 268.  A motion to dismiss under section 2-619(a)(9), on the other hand, acknowledges the plaintiff's cause of action but presents affirmative matters that avoid the legal effect of the claim.  
Golden v. Mullen
, 295 Ill. App. 3d 865, 869, 693 N.E.2d 385, 389 (1997).  The relevant inquiry for this court is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law."  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993).

Since the issues raised by either of the foregoing motions involve solely questions of law, our review is conducted 
de
 
novo
.  
Lawson
, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382.

I.

Breach of Contract

According to the amended complaint, Connelly & Schroeder are in breach of the alleged fee-sharing agreement obligating it to pay plaintiff an unidentified portion of the contingency fee received by settlement of the Dana Plastics case.  Fee-sharing arrangements among lawyers are governed by RPC 1.5(f), which provides:

"Except as provided in Rule 1.5(j), a lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses:

(1) that a division of fees will be made;

(2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and

(3) the responsibility to be assumed by the other lawyer for performance of the legal services in question."  134 Ill. 2d R. 1.5(f).

The provisions of RPC 1.5 operate with the force and effect of law (see 
In re Vrdolyak
, 137 Ill. 2d 407, 422, 560 N.E.2d 840, 845 (1990); 
Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire Inc.
, 107 Ill. App. 3d 442, 446-47, 437 N.E.2d 900 (1982)), and embody this State's public policy of placing the rights of clients above and beyond any lawyers' remedies in seeking to enforce fee-sharing arrangements.  
Albert Brooks Friedman, Ltd. v. Malevitis
, 304 Ill. App. 3d 979, 985, 710 N.E.2d 843, 847 (1999).

Connelly & Schroeder argues plaintiff is unable to succeed as a matter of law on her breach of contract claim because the client, Thunderhead, never consented to the parties' fee-splitting arrangement as required by RPC 1.5(f)
.  As Connelly & Schroeder observe, the plaintiff's amended pleading is devoid of any allegations concerning Thunderhead's consent.  Moreover, Connelly & Schroder's section 2-619 motion to dismiss is supported by the affidavit of Thunderhead's president, Janice Fries, who expressly avers that Thunderhead never consented to any fee-sharing arrangement between plaintiff and the law firm.  Lack of Thunderhead's consent, according to Connelly & Schroeder, renders the parties' agreement invalid on public policy grounds and, hence, unenforceable by plaintiff.

Plaintiff responds that the client-consent requirement of RPC 1.5(f) does not apply here because the fee-sharing arrangement was part of the separation agreement consummated upon plaintiff's departure from the law firm.  In support of her contention, plaintiff cites RPC 1.5(j), which states "[n]otwithstanding Rule 1.5(f), a payment may be made to a lawyer formerly in the firm, pursuant to a separation or retirement agreement."  134 Ill. 2d R. 1.5(j).  Plaintiff argues since the fee payment from the Dana Plastics litigation was to be made pursuant to the parties' separation agreement, Thunderhead's consent was not necessary.

While acknowledging RPC 1.5(j), Connelly & Schroeder maintains that this court's decision in the pre-RPC decision of 
Corti v. Fleisher
, 93 Ill. App. 3d 517, 417 N.E.2d 764 (1981) precludes operation of that provision and dispels 
plaintiff's claim that the agreed-upon fee payment was part of a "separation agreement."  In 
Corti
, the plaintiff-attorney and the defendant law firm entered into an employment agreement where it was agreed, 
inter
 
alia
, that upon the agreement's termination, Corti would be able to remove, notwithstanding client consent, any case files directly or indirectly referred to the firm by him.  Corti was further entitled to "all fees" generated by those cases by the firm subsequent to the agreement's termination irrespective of any legal services performed, or legal responsibility assumed, by him on those matters.

On appeal, this court affirmed the dismissal of Corti's complaint to enforce the terms of the employment agreement.  After initially observing that Corti's complaint was devoid of any allegations that he had enjoyed an attorney-client relationship with any of the referred clients, or that he had performed legal or other services with respect to those matters other than providing referrals (
Corti
, 93 Ill. App. 3d at 523, 417 N.E.2d at 769)), the court 
found, in relevant part, the contractual obligation on the part of the defendant law firm to remit all fees generated by the referred files to Corti "injurious to the best interests of the clients concerned because it reduces the motivation of *** [the firm and its attorneys] to use their best efforts in resolving the clients' cases."  
Corti
, 93 Ill. App. 3d at 523, 417 N.E.2d at 769-70.  
Since Corti's request concerned the remittance of fees derived from matters "in which subsequent to his employment he did not and could not have done any work," the effect of the parties' agreement, as explained by the court, was that the firm "would be required *** to perform all the legal work on these files and then to remit all fees to [Corti] who 'earned' them solely by indirectly referring the files[.]"  
Corti
, 93 Ill. App. 3d at 523-24, 417 N.E.2d at 770.  The court stated:

"It defies common sense to believe that *** [the firm and its attorneys] would be inclined to give the clients under these circumstances the same caliber of professional treatment that they would render to a client originating from their office. [The firm], instead, would be encouraged to dispose of the matters as quickly as possible without regard to the clients' best interests, realizing that all fees arising therefrom would accrue to [Corti] who rendered no services and assumed no responsibility for the files.  We will not lend judicial approval to an agreement of this nature, because it endangers the clients' right to receive their attorneys' complete care and consideration in the disposition of their legal affairs."  
Corti
, 93 Ill. App. 3d at 524, 417 N.E.2d at 770.

After examining at length various legal authorities discussing the propriety of fee division agreements between attorneys, including the predecessor to Rule 1.5(f), Disciplinary Rule 2-107 of the American Bar Association's Model Code of Professional Responsibility
(footnote: 1), 
the court further declared intra-attorney fee sharing agreements based solely upon a client referral unenforceable as violative of public policy.  93 Ill. App. 3d at 531, 417 N.E.2d at 775.

As part of its decision, the court considered Corti's argument that the parties' employment agreement constituted "a separation agreement between members of a law firm" and, thus, was sanctioned by DR 2-107(B) which, in similar fashion to RPC 1.5(j), sanctions payments to a former partner or associate of a law firm pursuant to a separation or retirement agreement.
(footnote: 2)  The court rejected Corti's contention, explaining:

"[i]n our opinion, DR 2-107(B) sanctions payment to a former partner or associate of a law firm for legal services which contributed to the firm's overall profits.  Invariably, a portion of those profits and the corresponding payments to the attorney may have derived from files upon which the departing employee rendered no actual services.  This practice, however, is permissible for two reasons.  First, the compensation is not directly linked to the particular files, so the employee is not rewarded for soliciting the clients' employment or failing to perform services for them.  Second, and more importantly, the clients are not affected by this arrangement and continue to receive the firm's best skills and abilities after the employee's termination of employment.  If applied to the particular agreement, however, this section [DR 2-107(B)] would condone an opposite result.  Because the compensation under the provision in question is exclusively tied to the referred files instead of the firm's general profits, [the] plaintiff would actually be rewarded for simply being a link in the chain which led to the clients' referral.  In addition, the client's best interests would suffer since the motivation of the firm to render them quality legal services would be substantially reduced, since all fees resulting from their files were promised to plaintiff, the departing employee, under the agreement."  
Corti
, 93 Ill. App. 3d at 531, 417 N.E.2d at 775.

Relying on this portion of 
Corti
's analysis, Connelly & Schroeder asserts the fee sharing arrangement in the present case does not represent, contrary to plaintiff's claim, a "separation agreement" as contemplated by RPC 1.5(j).  According to Connelly & Schroeder, 
Corti
 mandates that, for purposes of paragraph (j), a payment made pursuant to a separation agreement must be made from the general profits of the law firm and not from fees generated by representation of a particular case.  Since the payment to be made to plaintiff under the parties' agreement is directly linked to the Dana Plastics' litigation, rather than to the firm's profits as a whole, Connelly & Schroeder claims RPC 1.5(j) is inoperative and, therefore, client consent was necessary under paragraph (f).

We do not share defendants' reading of the 
Corti
 decision.  In our view, 
Corti
 does not hold that 
all
 payments made pursuant to a separation agreement must be from the firm's general profits.  Rather, the court, limiting its analysis to the particular agreement in that case, held that enforcement of the parties' accord under DR 2-107(B) could not be reconciled with public policy concerns.   According to the court, the provision providing for the remittance of all fees could not be directly tied to the referred files at issue because it would operate to undermine both the clients' best interests and the ethical prohibition of client referral payments.  Because giving effect to the "unique terms" of the "particular agreement" as urged by Corti would offend its public policy determinations, the court refused to apply DR 2-107(B).  Thus, the court focused on the application of paragraph (B) under the circumstances presented in that case and did not attempt to define that provision's operation in every conceivable situation.

We do not read 
Corti
 as standing for the proposition that a separation payment can never be tied to the fees generated in a particular case.  Instead, we construe 
Corti
 as holding that such a payment is improper only when its violates some established expression of public policy like those identified in the court's ruling.  Public policy concerns may, but not always, be implicated, and whether such concerns arise will depend on the circumstances and particular terms of the agreement involved in each case.

Connelly & Schroeder intimates that the public policy concerns raised by the 
Corti
 court are implicated by the parties' fee-sharing agreement in this case.  Because 
Corti
 was decided without reference to, and before the adoption of, the RPC and its predecessor, the Illinois Code of Professional Responsibility, the question arises whether the public policy expressed by 
Corti
 remain viable.

Nothing in the RPC sanctions a fee-splitting agreement between lawyers where one attorney is entitled to a remittance of all the fees generated by the legal work of the other.  Certainly, as explained in 
Corti
, such a fee-splitting agreement severely comprises the best interests of the client since the paying attorney has little or no incentive to effectively handle the client's matter.

Moreover, 
Corti
's prohibition of fee-sharing agreements predicated solely on client referrals is embodied in the RPC.  While the RPC expressly approves of fee sharing agreements where the primary service performed by one lawyer is the referral of the client to another lawyer (see 134 Ill. 2d R. 1.5(g)), such arrangements cannot rest on the referral alone.  Most importantly, the referring attorney must assume "the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer
."  134 Ill. 2d R. 1.5(g)(2).
(footnote: 3)
 Further, to the extent 
Corti
's analysis can be construed as conflicting with the provisions of RPC 1.5, we note, as discussed earlier, that the supreme court in 
Vrdolyak
 made it clear that the rules governing attorney conduct operate with the force of law.  The court went further and stated: "[a]ccordingly, the [Disciplinary] Code, as a binding body of disciplinary rules, has, 
sub
 
silentio
, overruled prior judicial decisions which conflict with its mandates and proscriptions."  560 N.E.2d at 845, 137 Ill. 2d at 422.

Since we find the public policy determinations expressed in 
Corti
 still viable, we must consider whether those particular concerns are implicated by the parties' fee-sharing agreement in this case.  We find they are not.

First, the best interests of Thunderhead in receiving complete and careful representation is not comprised by the parties' arrangement.  While the record suggests that Connelly & Schroeder would be responsible for a majority of the work performed in the Dana Plastics matter, the firm is not required to remit the entire fee recovered for its efforts to plaintiff.  Rather, the amended complaint indicates the law firm is to retain some percentage of the recovered fee.  Connelly & Schroeder certainly stands to gain from its services and, accordingly, possesses the incentive to
 use its best efforts in handling Thunderhead's case.

The fee-sharing agreement is further not predicated on a mere client referral
.  While we acknowledge plaintiff's repeated references in her amended complaint to the payment as a "referral fee," a liberal reading of the complaint shows 
that the firm's payment represents its consideration for plaintiff agreeing not to take all the Thunderhead files with her upon leaving the firm's employ.  Hence, the agreement does not impermissibly reward plaintiff for "simply being a link in the chain."

We find the parties' fee-sharing agreement, as it is alleged in the amended complaint, falls within the scope of RPC 1.5(j) and, as such, does not need to adhere to the requirements contained in RPC 1.5(f).
(footnote: 4)  Plaintiff's contract claim, therefore, is not precluded as a matter of law.

Nonetheless, dismissal is warranted under section 2-615 of the Act because plaintiff's factual allegations do not adequately support her cause of action.   A claim for breach of contract requires the plaintiff to allege, 
inter
 
alia
, the definite and certain terms of the parties' agreement.  
Brown and Kerr, Inc. v. American Stores Properties, Inc.
, 306 Ill. app. 3d 1023, 1030, 715 N.E.2d 804, 810 (1999); 
Barille v. Sears Roebuck and Company
, 289 Ill. App. 3d 171, 175, 682 N.E.2d 118, 121 (1997).  The allegations of the amended complaint fail in this regard.  Particularly, the complaint is silent as to the percentage of the recovered contingency fee, or basis thereof, to be paid plaintiff.  While proper on this basis, dismissal is without prejudice since the complaint's infirmity can be corrected by amendment.  
See 
Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co., Inc.
, 264 Ill. App. 3d 878, 885, 637 N.E.2d 1103, 1109 (1994) ("[i]f a plaintiff can state a cause of action by amending the pleadings, a case should not be dismissed with prejudice on the pleadings").

II.

Breach of Fiduciary Duty

Predicated on Joint Venture

Plaintiff further asserts a claim for breach of fiduciary duty, which required her to set forth factual allegations establishing (1) the existence of a fiduciary duty on the part of Connelly & Schroeder, (2) Connelly & Schroeder
's breach of that duty, and (3) damages proximately resulting therefrom.  
Neade v. Portes
, 193 Ill. 2d 433, 444, 739 N.E.2d 496, 502 (2000).  Plaintiff's fiduciary breach claim is predicated on an alleged joint venture between her and Connelly & Schroeder to defend Thunderhead in the litigation involving Dana Plastics.  Therefore, to prevail on her claim, it was incumbent upon plaintiff to adequately allege the existence of the asserted joint venture.

A joint venture is an association of two or more individuals engaged to carry out a single enterprise for profit.  
Groark v. Thorlief Larsen & Son, Inc.
, 231 Ill. App. 3d 61, 66, 596 N.E.2d 78, 81 (1992). 
 Our supreme court has expressly recognized that when "lawyers between whom no general partnership relation exists jointly undertake to represent a client in a case, they may be regarded as joint venturers *** for the particular transaction."  
In re Johnson
, 133 Ill. 2d 516, 525, 552 N.E.2d 703, 707 (1989).  As joint venturers, each attorney owes the other the fiduciary obligations of loyalty and good faith with respect to all matters affecting their joint representation.  
Larry Karchmar, Ltd. v. Nevoral
, 302 Ill. App. 3d 951, 956-57, 707 N.E.2d 223, 226-27 (1999)
.

The mere sharing of fees between attorneys, however, is insufficient, by itself, to establish a joint venture.  
Canel and Hale, Ltd v. Tobin
, 304 Ill. App. 3d 906, 916, 710 N.E.2d 861, 870 (1999); but see 
Karchmar
, 302 Ill. App. 3d at 956, 707 N.E.2d at 226 (stating "[a]n agreement between two attorneys to share fees creates a joint venture")
.  "Without more, 'the mere fact that attorneys associate on a fee for services basis does not make them joint venturers.'"  
Canel and Hale
, 304 Ill. App. 3d at 917, 710 N.E.2d at 871.

The existence of a joint venture is shown by allegations demonstrating (1) a community of interest in the purpose of the joint association, (2) a right of each member to direct and govern the policy and conduct of the other members, and (3) a right to joint control and management of the property used in the enterprise.  
Behr v. Club Med, Inc.
, 190 Ill. App. 3d 396, 409, 546 N.E.2d 751, 760 (1989); 
Barton v. Evanston Hospital
, 159 Ill. App. 3d 970, 974, 513 N.E.2d 65, 67 (1987); 
Clapp v. JMK/Skewer, Inc.
, 137 Ill. App. 3d 469, 471, 484 N.E.2d 918, 920 (1985).

The amended complaint utterly fails to allege any of the elements necessary to show the parties' engaged in a joint venture to represent Thunderhead in the Dana Plastics litigation.  The complaint simply asserts that "plaintiff and Connelly & Schroeder entered into a joint venture," without alleging that the parties shared a common purpose to provide Thunderhead's representation, pursuant to which each enjoyed a degree of control over the other and the course of representation in general.  Plaintiff's bald assertion that a joint venture existed does not save her claim.

It is patently clear from the complaint's allegations that the parties never intended to associate with one another for purposes of jointly representing Thunderhead.  Significantly, while plaintiff did provide some services on Thunderhead's behalf, those services were rendered while plaintiff was a member of the law firm.  The crux of plaintiff's breach of fiduciary duty claim is the failure of Connelly & Schroeder to pay plaintiff the agreed-upon portion of the fee obtained pursuant to the Dana Plastics settlement.  As discussed, this fee agreement was reached upon plaintiff's departure from the law firm and represented the firm's consideration for plaintiff leaving the Thunderhead files.  The parties' agreement, thus, does not concern any joint representation of Thunderhead but, rather, reflects the terms of plaintiff's separation.  Because plaintiff is unable to allege any facts that would entitle her to relief, her breach of fiduciary duty claim was properly dismissed with prejudice.

III.

Intentional Interference with

Prospective Economic Advantage

Plaintiff lastly charges Connelly & Schroeder with intentionally interfering with her prospective business relationship with Thunderhead.  To adequately state such a claim, the allegations of plaintiff's complaint must show (1) a reasonable expectancy of entering into a valid business relationship, (2) Connelly & Schroeder's knowledge of that expectancy, (3) an intentional and unjustified interference by Connelly & Schroeder that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from Connelly & Schroeder's interference.  
Andersen v. Vanden Dorpel
, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996); 
Small v. Sussman
, 306 Ill. App. 3d 639, 648, 713 N.E.2d 1216, 1223 (1999).

Plaintiff utterly fails to allege any intentional interference on the part of Connelly & Schroeder.  Nor could she.  The element of "purposeful" or "intentional" interference refers to some impropriety committed by the defendant in interfering with the plaintiff's expectancy of entering into a valid business relationship with an identifiable third party.  
Dowd & Dowd v. Gleason
, 181 Ill. 2d 460, 484, 693 N.E.2d 358, 371 (1998).  In this regard, facts must be alleged suggesting that the defendant acted intentionally with the aim of injuring the plaintiff's expectancy.  
J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.
, 213 Ill. App. 3d 510, 515, 572 N.E.2d 1090, 1094 (1991).

Plaintiff's claim is based on the asserted expectancy of taking Thunderhead as a client upon her departure from the law firm.  Yet, the complaint fails to specify any action on the part of Connelly & Schroeder directed toward Thunderhead that had the purpose of thwarting any relationship plaintiff had expected.  In fact, it was plaintiff herself, not Connelly & Schroeder, that ended any prospect of a professional relationship between her and Thunderhead.  As is clear from the complaint's allegations, plaintiff voluntarily abandoned her asserted expectancy by accepting the firm's offer of receiving a payment of money in exchange for not taking Thunderhead and its files.  Plaintiff is unable to allege any facts that would entitle her to relief and, accordingly, her intentional interference claim is dismissed with prejudice.

CONCLUSION

For the foregoing reasons, plaintiff's claims for breach of fiduciary duty and intentional interference with prospective economic advantage are dismissed with prejudice.  Plaintiff's claim for breach of contract is also dismissed but without prejudice, and the cause is remanded for further proceedings regarding this claim.

HALL, P.J., and BURKE, J., concur.

FOOTNOTES
1:
The Illinois supreme court adopted a substantially similar version of the ABA Code with the Illinois Code of Professional Responsibility, effective June 3, 1980.

2:
DR 2-107(B) states: "This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."

3:
Unlike 
Corti
, RPC 1.5(g) allows for the division of fees irrespective of whether the referring attorney rendered any services in the referred matter.  
Richards v. SSM Health Care, Inc.
, 311 Ill. App. 3d 560, 565, 724 N.E.2d 975, 979 (2000).  Furthermore, paragraph (g) differs from 
Corti
's ruling in that the benefit to be received by the referring attorney must be disclosed.  134 Ill. 2d R. 1.5(g)(1).  In these respects, RPC 1.5(g) alters the public policy expressed in 
Corti
 but does not affect 
Corti
's central holding that fee-sharing agreements based solely on client referrals are impermissible.

4:
We believe it does not matter whether plaintiff could have in fact taken the Thunderhead files with her upon her departure from the firm.  The reasonable inference raised by the allegations of the amended complaint that two of the firm's partners believed plaintiff might have taken the files without an agreement must be taken as true at this stage in the proceedings.  According to the record, the parties reached an amicable agreement to share a fee for plaintiff's agreement not to take the Thunderhead files.