814 N.E.2d 951 (2004)
351 Ill. App.3d 963
286 Ill.Dec. 725
Dennis BRENNAN, Plaintiff-Appellant
v.
Phil KADNER and Midwest Suburban Publishing, Inc. d/b/a Daily Southtown, Inc., Defendants-Appellees.
No. 1-03-1476.
Appellate Court of Illinois, First District, Third Division.
August 11, 2004.
*954 Patrick J. O'Malley, Chicago, for Appellant.
Funkhouser Vegosen Liebman & Dunn Ltd. (Damon E. Dunn, of counsel), Chicago, for Appellee.
Justice HALL delivered the opinion of the court:
Plaintiff, Dennis A. Brennan, filed this defamation action against Midwest Suburban Publishing, Inc., d/b/a Daily Southtown, Inc., and Phil Kadner, a columnist for the Daily Southtown newspaper, for alleged damages arising from the publication of a column regarding plaintiff's appearance at an administrative hearing before the Illinois State Board of Elections (Election Board). Plaintiff's two-count complaint alleged defamation per se (count I) and false light invasion of privacy (count II).
The trial court dismissed the complaint pursuant to both section 2-615 and section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 1996)), ruling that the alleged defamation was not a verifiable fact and was subject to an innocent construction. Plaintiff appeals from the trial court's order granting defendants' motion to dismiss.
On appeal, plaintiff contends that: (1) the published statement in defendants' column announcing that plaintiff used the United States mail to perpetrate a fraud constitutes defamation per se rather than constitutionally protected opinion; (2) the statement at issue is not reasonably capable of an innocent construction; (3) the statement is not substantially true; (4) his complaint sufficiently alleges actual malice; and (5) his complaint states a claim for false light invasion of privacy. For the reasons that follow, we affirm.

BACKGROUND
In February or early March of 2001, plaintiff and several other individuals formed a political committee referred to as the Committee to Stop the Hurckes Four. The committee was established to oppose the election of four candidates who were running for positions on the school board in Oak Lawn Community High School District 229 (District 229). See Brennan v. Illinois State Board of Elections, 336 Ill.App.3d 749, 754, 271 Ill.Dec. 300, 784 N.E.2d 854 (2002). The four candidates were endorsed by Jerry Hurckes, a village trustee, who some years before, had been accused of committing election fraud.
Plaintiff was legal counsel for District 229. It was established that if the four candidates Hurckes endorsed were elected to the school board, plaintiff would lose his contract as counsel for the school district. See Brennan, 336 Ill.App.3d at 754, 271 Ill.Dec. 300, 784 N.E.2d 854. Plaintiff personally loaned the committee funds to produce a professional videotape attacking the four candidates for being associated with Hurckes. Shortly before the election, copies of the videotape were mailed to over 7000 registered voters in the school district.
On August 7, 2001, the Election Board filed an amended complaint charging plaintiff and the committee with violation of various sections of the Illinois Election Code (Election Code) (10 ILCS 5/9-1 et *955 seq. (West 2000)), pertaining to the disclosure of campaign contributions and expenditures. See Brennan, 336 Ill.App.3d at 752-55, 271 Ill.Dec. 300, 784 N.E.2d 854.
After several administrative hearings were held, an Election Board hearing officer issued a written report on October 5, 2001, finding, inter alia, that the committee and plaintiff failed to report contributions to the committee in excess of $500 within two business days; plaintiff failed to turn over to the acting committee chairman financial receipts and proofs of transactions to the committee; plaintiff filed a false D-1 statement of organization naming David Zapata as chairman and treasurer when, in fact, plaintiff was the committee's de facto chairman and treasurer; plaintiff allowed the committee to accept and expend funds at a time when the committee had vacancies in the offices of chairman and treasurer; plaintiff filed a false D-1 and amended D-1 by failing to list his name as a sponsoring entity; and plaintiff's actions were performed with the intent to violate the Election Code. Brennan, 336 Ill.App.3d at 758, 271 Ill.Dec. 300, 784 N.E.2d 854.
Six days later, on October 11, 2001, the Daily Southtown published a column authored by Kadner, entitled "State's election laws may be a paper tiger." The column focused on Kadner's concern that in light of a Will County circuit court's ruling that the State Gift Ban Act (5 ILCS 425/1 et seq. (West 2000)) was unconstitutional (see Flynn v. Ryan, 199 Ill.2d 430, 264 Ill.Dec. 710, 771 N.E.2d 414 (2002)), the Election Board might not have the statutory authority to financially penalize plaintiff for his conduct in violating the Election Code.
In the column, Kadner discussed a report published in a newsletter on state politics called "Capital Fax," which was produced by Rich Miller, a fellow columnist for the Daily Southtown. The column contained the following relevant passages:
"The hearing officer, in addition to recommending a fine for [plaintiff], also urged that the case be turned over to the Illinois attorney general or Cook County state's attorney for possible criminal prosecution.
Capital Fax reported that [Al Zimmer, the election board's general counsel] recommended that the election board forward its information to the Cook County state's attorney, but also recommended that the Illinois Attorney and Registration Disciplinary Commission be sent the information.
The Commission has the power to suspend a lawyer's license.
Beyond that, Zimmer recommended that the election board merely issue a decree forbidding [plaintiff] from misbehaving again, according to Capital Fax.
I asked Zimmer if the election board had ever urged a criminal prosecution of an individual, rather than a campaign committee, for violations of the election code.
`Not since I've worked here,' said Zimmer, who has worked for the election board for 16 years.
Another source said that the election board could refer [plaintiff's] case to the U.S. attorney's office, claiming that he used the U.S. mail in perpetrating a fraud."
On October 16, 2001, in a written order, the Election Board adopted the hearing officer's findings of fact and conclusions of law. The order directed plaintiff, the committee, and David Zapata, to cease and desist from the conduct complained of in the complaint; it levied a fine against the committee in the amount of $4,200, which was stayed until further order of the Election Board, and it directed the Election *956 Board's general counsel to send a copy of the order to the Cook County State's Attorney's office and to the Illinois Attorney Registration and Disciplinary Commission.
Approximately a year later, on October 11, 2002, plaintiff filed a two-count defamation action against defendants. In the complaint, plaintiff alleged that the passage in Kadner's column stating that a source had declared that the Election Board could refer plaintiff's case to the United States attorney's office for prosecution for mail fraud imputed that plaintiff committed a federal crime and imputed to plaintiff a want of integrity in the discharge of his office or employment, which thereby constituted defamation per se and false light invasion of privacy.
On April 22, 2003, the trial court entered an order dismissing the complaint pursuant to both section 2-615 and section 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 1996)), ruling that the alleged defamatory statement was not a verifiable fact and was subject to an innocent construction. Plaintiff now appeals from the trial court's order granting defendants' motion to dismiss.

ANALYSIS
In the present case, the trial court dismissed plaintiff's complaint pursuant to both section 2-615 and section 2-619 of the Code, ruling that the alleged defamation was not a verifiable fact and was subject to an innocent construction. A section 2-615 motion challenges a complaint for failing to state a cause of action, while a section 2-619(a)(9) motion admits the legal sufficiency of a complaint but asserts that it is barred by some affirmative matter. Lawson v. City of Chicago, 278 Ill.App.3d 628, 634, 215 Ill.Dec. 237, 662 N.E.2d 1377 (1996).
Motions filed under either section admit all well-pleaded facts together with all reasonable inferences that can be drawn therefrom. Romanek v. Connelly, 324 Ill.App.3d 393, 398, 257 Ill.Dec. 436, 753 N.E.2d 1062 (2001). In ruling on either motion, all pleadings and supporting documents are construed in a light most favorable to the nonmoving party. Romanek, 324 Ill.App.3d at 398, 257 Ill.Dec. 436, 753 N.E.2d 1062. "The relevant inquiry for this court is `whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.'" Romanek, 324 Ill.App.3d at 398, 257 Ill.Dec. 436, 753 N.E.2d 1062, quoting Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116-17, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). Since resolution of either motion involves only a question of law, our review is de novo. Romanek, 324 Ill.App.3d at 398, 257 Ill.Dec. 436, 753 N.E.2d 1062; LaSalle National Bank v. City Suites, Inc., 325 Ill.App.3d 780, 789, 259 Ill.Dec. 259, 758 N.E.2d 382 (2001).

I. Defamation
The defamation action provides redress for false statements of fact that harm reputation. Hopewell v. Vitullo, 299 Ill.App.3d 513, 517, 233 Ill.Dec. 456, 701 N.E.2d 99 (1998). A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him or her. Dubinsky v. United Airlines Master Executive Council, 303 Ill.App.3d 317, 323, 236 Ill.Dec. 855, 708 N.E.2d 441 (1999); Restatement (Second) of Torts § 559 (1977).
To prove defamation, a plaintiff must show: (1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of *957 the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff. Parker v. House O'Lite Corp., 324 Ill.App.3d 1014, 1020, 258 Ill.Dec. 304, 756 N.E.2d 286 (2001). There are two types of defamatory statements, defamation per se and defamation per quod. Bryson v. News America Publications, Inc., 174 Ill.2d 77, 88, 103, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996). This case concerns defamation per se.
A statement is defamatory per se if the words used are so obviously and materially harmful to the plaintiff that injury to the plaintiff's reputation may be presumed. Van Horne v. Muller, 185 Ill.2d 299, 307, 235 Ill.Dec. 715, 705 N.E.2d 898 (1998). Illinois recognizes five categories of defamatory statements that are considered actionable per se: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication. Bryson, 174 Ill.2d at 88-89, 220 Ill.Dec. 195, 672 N.E.2d 1207; Van Horne, 185 Ill.2d at 307, 235 Ill.Dec. 715, 705 N.E.2d 898; Schivarelli v. CBS, Inc., 333 Ill.App.3d 755, 759, 267 Ill.Dec. 321, 776 N.E.2d 693 (2002).
Plaintiff alleges that he was defamed by the statement in Kadner's column wherein Kadner wrote that he was told by a source that the Election Board could refer plaintiff's case to the United States attorney's office, claiming that plaintiff used the mails in perpetrating a fraud. Plaintiff maintains that Kadner's statement was defamatory per se in that it imputed the commission of a crime. Plaintiff contends that the statement is objectively verifiable and, thus, actionable.
Defendants respond that the complained-of statement in Kadner's column is an expression of nonactionable opinion, not verifiable fact, and therefore, is constitutionally protected. Defendants also maintain that the passage is reasonably susceptible to an innocent construction and is substantially true. Since we find that the statement at issue is an expression of nonactionable opinion, we do not address whether it is reasonably susceptible to an innocent construction or is substantially true.
There is no separate first amendment privilege for statements of opinion. Bryson, 174 Ill.2d at 99-100, 220 Ill.Dec. 195, 672 N.E.2d 1207. A statement will receive first amendment protection provided it does not state actual facts. Moriarty v. Greene, 315 Ill.App.3d 225, 233, 247 Ill.Dec. 675, 732 N.E.2d 730 (2000). Only factual statements capable of being proven true or false are actionable. Moriarty, 315 Ill.App.3d at 233, 247 Ill.Dec. 675, 732 N.E.2d 730.
The determination of whether an alleged defamatory statement is a statement of fact or opinion is a question of law. Moriarty, 315 Ill.App.3d at 234, 247 Ill.Dec. 675, 732 N.E.2d 730. Illinois courts follow the totality of the circumstances analysis developed in Ollman v. Evans, 750 F.2d 970, 979 n. 16 (D.C.Cir.1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985), to serve as a guideline in making this determination. Moriarty, 315 Ill.App.3d at 234-35, 247 Ill.Dec. 675, 732 N.E.2d 730. In this analysis, the court considers the statement from the perspective of an ordinary reader of the statement. Ollman, 750 F.2d at 979 n. 16.
*958 The following four-part test is used to determine whether the average reader would view a statement as one of fact or opinion: (1) the precision of the statement; (2) verifiability of the statement; (3) literary context of the statement; and (4) public and social contexts of the statement. Moriarty, 315 Ill.App.3d at 235, 247 Ill.Dec. 675, 732 N.E.2d 730. "If it is clear that the writer is exploring a `subjective view, an interpretation, a theory, conjecture or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.'" Moriarty, 315 Ill.App.3d at 235, 247 Ill.Dec. 675, 732 N.E.2d 730, quoting Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir.1993).
Applying these principles to the case at bar, we find that the statement at issue in Kadner's column announcing that a source told him that the Election Board could refer plaintiff's case to the United States attorney's office claiming that plaintiff used the United States mail in perpetrating a fraud cannot be characterized as a verifiable statement of fact. The statement was not couched in terms of a factual assertion that plaintiff committed the offense of mail fraud, but as conjecture as to whether the Election Board could refer plaintiff's case to federal authorities. The very word "could" inherently connotes a subjective judgment.
While it is true that simply prefacing a statement with qualifying language such as "I think," "I predict," or "I believe" will not convert a factual statement into constitutionally protected speech (Dubinsky, 303 Ill.App.3d at 326, 236 Ill.Dec. 855, 708 N.E.2d 441), literary, public, and social contexts are a major determinant of whether an ordinary reader would view an alleged defamatory statement as constituting fact or opinion. Moriarty, 315 Ill.App.3d at 235, 247 Ill.Dec. 675, 732 N.E.2d 730. The California Supreme Court elaborated upon this principle in Gregory v. McDonnell Douglas Corp., 17 Cal.3d 596, 601, 552 P.2d 425, 428, 131 Cal.Rptr. 641, 644 (1976), stating:
"Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion."
In the instant case, the alleged defamatory statement was made in the literary context of "a regularly featured column by a journalist who regularly expressed his personal opinions on a wide range of public and social issues." Moriarty, 315 Ill.App.3d at 235, 247 Ill.Dec. 675, 732 N.E.2d 730. In regard to the public and social contexts, Kadner's statement was directed at the political debate surrounding a campaign finance dispute relating to a school board election in District 229 and plaintiff's involvement in that controversy. Kadner's column addressed a matter of obvious public concern to citizens in Oak Lawn Community High School District 229. Moreover, the statement did not accuse plaintiff of mail fraud but rather expressed Kadner's speculation that if it was determined that the Election Board did not have the statutory authority to financially penalize plaintiff for his conduct in violating the Election Code, the Board could still refer his case to the United States attorney's office.
In light of the nature of the controversy and the overall tenor of the column, we cannot conclude that Kadner's statement was a factual assertion. Given the context and the other surrounding passages in the *959 column, a reasonable reader would not have taken the statement as a literal assertion that plaintiff had actually committed mail fraud.
Plaintiff also argues that the truth or falsity of Kadner's statement is objectively verifiable and thus actionable because it could be proven through discovery whether the alleged original "source" of the statement actually made the statement or even existed. We must reject plaintiff's argument. The original source of a statement has no bearing on the analysis as to whether the statement is defamatory.
The republisher of a defamatory statement made by another is himself liable for defamation even if he gives the originator's name. Owens v. CBS Inc., 173 Ill.App.3d 977, 992, 123 Ill.Dec. 521, 527 N.E.2d 1296 (1988). Therefore, if the statement at issue was defamatory, defendants could be held libel for publishing it regardless of whether they revealed the original source of the statement.
However, a republisher cannot be held liable unless the plaintiff establishes by clear and convincing evidence that the statement was published with actual malice, that is, with knowledge that the statement was false or with reckless disregard as to whether it was false. Catalano v. Pechous, 83 Ill.2d 146, 168, 50 Ill.Dec. 242, 419 N.E.2d 350 (1980). In this case, plaintiff conceivably could establish actual malice if he could show that the alleged originator or source of the statement either did not exist or did not make the statement, or that defendants knew the statement was false or recklessly disregarded whether it was false. Nonetheless, the source of the statement is not a factor in our analysis since we have determined that the statement is nonactionable opinion.

II. False Light Invasion of Privacy
Plaintiff finally contends that his complaint stated a claim for false light invasion of privacy. We must reject plaintiff's contention.
The tort of false light invasion of privacy protects one's interest in being let alone from false publicity. Parker, 324 Ill.App.3d at 1032, 258 Ill.Dec. 304, 756 N.E.2d 286. To state a claim of false light invasion of privacy, a plaintiff must allege and prove that: (1) he was placed in a false light before the public as a result of the defendant's action; (2) the false light in which he was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. Dubinsky, 303 Ill.App.3d at 330, 236 Ill.Dec. 855, 708 N.E.2d 441.
Even though it is not necessary to be defamed to maintain a false light claim, the similarities between defamation and false light claims make certain restrictions and limitations for defamation equally applicable to false light claims. Moriarty, 315 Ill.App.3d at 237, 247 Ill.Dec. 675, 732 N.E.2d 730. This would include an opinion that allegedly placed a plaintiff in a false light. Moriarty, 315 Ill.App.3d at 237, 247 Ill.Dec. 675, 732 N.E.2d 730. Since we have determined that Kadner's statement is an expression of nonactionable opinion, the same analysis applies to the false light claim.
Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
HOFFMAN, P.J., and SOUTH, J., concur.