Sixth Division
October 26, 2007

No. 1-06-1895

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| WESTHAVEN PROPERTIES PARTNERSHIP, an Illinois Partnership, EAST HAZEL CREST PROPERTIES PARTNERSHIP, an Illinois Partnership, WHOLESALE REAL ESTATE SERVICES, INC., an Illinois Corporation, JACOB L. WEGLARZ, Individually and as Trustee of Jacob L. Weglarz 1985 Trust Under Agreement Dated May 1, 1985, and FRANK O'HARE, | ) ) ) ) ) ) ) ) ) ) | 03 CH 00382

Hon. Anthony L. Young and Patrick McGann, |
| Defendants-Appellees. | ) | Judges Presiding. |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, Fidelity National Title Insurance Company of New York, appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendants, Westhaven Properties Partnership, East Hazel Crest Properties Partnership, and Jacob Weglarz, individually and as trustee of the Jacob L. Weglarz 1985 Trust Under Agreement Dated May 1, 1985, on counts II, III and XI of Fidelity's third amended complaint.[1]  Fidelity also appeals from an order of the circuit court granting defendants' motion to dismiss count VIII of the third amended complaint.  For the reasons that follow, we affirm.

The primary issue in this case is whether a written notice requirement was a material provision of a contract.  Specifically, a provision in two virtually identical partnership agreements

_____

[1]Defendant Frank O'Hare was previously dismissed from this action and is not a party to this appeal.

provided that any partner seeking to assign his partnership interest must give the remaining partners written notice of his intention to do so and that the remaining partners have a right of first refusal. The circuit court, in granting summary judgment, held that the written notice requirement was a material provision of the partnership agreements and therefore found that an attempted assignment of a partnership interest was invalid because written notice of that assignment was not given.

Turning now to the facts of this case, Fidelity filed a second amended complaint against defendants on October 22, 2003. The complaint sought relief under the following theories: unjust enrichment (count I), declaratory judgment (counts II and III), conversion (counts IV and V), unjust enrichment (count VI), and fraud (count VII). Defendants filed a motion to dismiss counts I through V of the second amended complaint, and on April 12, 2004, the circuit court granted that motion, in part, and dismissed counts II through V of the second amended complaint. On November 12, 2004, Fidelity filed a motion to reconsider that dismissal.

Meanwhile, on November 18, 2004, Fidelity filed the third amended complaint at issue in this case, seeking to recover its partnership interests in the East Hazel Crest Properties Partnership (East Hazel Crest) and Westhaven Properties Partnership (Weshaven). Fidelity alleged that it had been validly assigned interest in both partnerships and that defendants refused to honor those assignments. Fidelity alleged the following facts as common to all counts of its complaint.

Laurence Capriotti and Jack Hargrove jointly owned Intercounty Title Company of Illinois (Old Intercounty), a title insurance company registered in Illinois. In 1985, Hargrove, Capriotti

and Jacob Weglarz entered into two partnership agreements which formed the East Hazel Crest and Westhaven partnerships. On January 2, 1986, Weglarz, Hargrove, Capriotti, Old Intercounty and O'Hare entered into an amendment to the East Hazel Crest partnership agreement. Pursuant to that amendment, Hargrove and Capriotti each assigned his 5% equity partnership interest in the East Hazel Crest Properties Partnership to Intercounty Title Company of Illinois such that Intercounty held a 10% equity partnership interest in the East Hazel Crest Properties Partnership. Also pursuant to that amendment, Weglarz assigned his 90% equity partnership interest in the East Hazel Crest Properties Partnership to Jacob Weglarz, as trustee of the Jacob Weglarz 1985 Trust Under Agreement Dated May 1, 1985, and to O'Hare, such that the Trust held an 85% equity interest in the East Hazel Crest Properties Partnership and O'Hare held a 5% equity partnership interest.

On January 2, 1986, Weglarz, Hargrove, Capriotti, Old Intercounty and O'Hare entered into a similar amendment to the Westhaven partnership agreement. Pursuant to that amendment, Hargrove and Capriotti each assigned his 10% equity partnership interest in the Westhaven Properties Partnership to Intercounty such that Intercounty held a 20% equity partnership interest in the Westhaven Properties Partnership. Also pursuant to that amendment, Weglarz assigned his entire 80% equity partnership interest in the Westhaven Properties Partnership to Jacob Weglarz, as trustee of the Jacob Weglarz 1985 Trust Under Agreement Dated May 1, 1985, and to O'Hare, such that the Trust held an 75% equity interest in the Westhaven Properties Partnership and O'Hare held a 5% equity partnership interest.

Old Intercounty issued title insurance policies in Illinois in the 1980s and 1990s. Old

1-06-1895

Intercounty became insolvent in 1990s due to Hargrove, Capriotti and other Old Intercounty principals misappropriating Old Intercounty's escrow funds. Hargrove and Capriotti invested some of these funds into the Westhaven and East Hazel Crest partnerships.

In 1995, Capriotti, Hargrove and others formed a new title company, Intercounty Title Company, a related underwriter, and ITI Enterprises (collectively, New Intercounty). The two Intercounty escrow funds were run together and a large deficiency in Old Intercounty's escrow was transferred to New Intercounty's escrow accounts. On March 17, 2000, Hargrove pledged certain assets to Fidelity in exchange for its agreement to make payments on behalf of New Intercounty or ITI to cover expected deficiencies in the escrow accounts. (Hargrove I).

On April 26, 2000, Hargrove, on behalf of Old Intercounty, assigned to Fidelity all of Hargrove and ITI's interest in the Westhaven and East Hazel Crest partnerships. These assignments were made as collateral toward making Fidelity whole for payments Fidelity would make on behalf of New Intercounty or ITI to cover deficiencies in Intercounty's escrow account. (Hargrove II). In Hargrove II, Hargrove and ITI represented that they either owned or could control the ownership of the assigned partnership interests, that they were authorized to make the assignments, and that they would cause to be executed any additional documents required to perfect Fidelity's interest in the collateral.

On May 23, 2000, Hargrove executed a third agreement with Fidelity in which he agreed to take all necessary steps to "assign to Fidelity any distributions of cash or property" from the East Hazel Crest and Westhaven partnerships (Hargrove III).

In June 2000, Old Intercounty, Fidelity and O'Hare entered into a second amendment to

the East Hazel Crest and Westhaven partnership agreements (the East Hazel Crest and Westhaven assignments). Pursuant to those amendments, Old Intercounty assigned to Fidelity "all of [its] right, title and interest in any and all distributions of monies or other property due or to become due" from the East Hazel Crest and Westhaven partnerships.

In July 2001, Capriotti approached Hargrove's attorney, Daniel Meenan, to solicit Hargrove's participation in a plan to sell to Weglarz the same partnership interests which had previously been assigned to Fidelity. Capriotti told Meenan that Weglarz was willing to pay Old Intercounty $1 million for the partnership interests. Meenan advised Capriotti that Hargrove would not participate in such a plan because Old Intercounty, acting through Hargrove, had assigned those partership interests to Fidelity. On July 26, 2001, Hargrove transferred any interest he had in Old Intercounty to Capriotti and resigned from all offices that he held with the company.

The complaint further alleged that prior to the sale of the partnership interests to Weglarz, Richard Skrodzki, Weglarz's attorney, contacted Meenan regarding Hargrove's assignment of the partnership interests to Fidelity. During that conversation, Meenan specifically advised Skrodzki that Old Intercounty's interests in the East Hazel Crest and Westhaven partnerships had previously been assigned to Fidelity and that Hargrove would therefore not participate in a sale of those interests to Weglarz. Notwithstanding this prior knowledge, on or about August 7, 2001, Weglarz purchased Old Intercounty's interests in the East Hazel Crest and Westhaven partnerships.

In its third amended complaint, Fidelity alleged that Hargrove controlled and was

authorized to assign Old Intercounty's partnership interests in the East Hazel Crest and Westhaven partnerships. Fidelity also alleged that Hargrove had represented to Fidelity that all partners had notice of Intercounty's assignment of its partnership interests to Fidelity and that, despite its demand, Fidelity had not received any monies or other property due from the partnerships.

As relevant to this appeal, Fidelity's third amended complaint sought relief under the following theories: declaratory judgment (counts II and III); tortious interference with contractual relationship (count VIII); and tortious interference with prospective business relationship (count XI). Counts I, IV, V, VI, VII, IX and X, which are not relevant to this appeal, sought relief under the following theories: unjust enrichment (counts I and VI); conversion (counts IV and V); fraud (count VII); breach of contract (count IX); and specific performance (count X).

On December 27, 2004, defendants filed a motion to dismiss counts VIII, X and XI of Fidelity's third amended complaint. On March 4, 2005, the circuit court granted defendants' motion, in part, and dismissed counts VIII (tortious interference with contractual relationship) and X (specific performance). In that same order, the court granted Fidelity's motion to reconsider, in part, and reinstated counts II and III (declaratory judgment) of the third amended complaint.

On March 10, 2005, the parties filed cross-motions for summary judgment on counts II, III and XI of Fidelity's third amended complaint. Regarding counts II and III, Fidelity argued that it was entitled to summary judgment because it had been validly assigned interests in the East Hazel Crest and Westhaven partnerships, that it had performed all necessary conditions under the partnership agreements for those assignments, and that Weglarz's conduct demonstrated that he

received adequate notice of Hargrove's intent to assign the interests. Defendants, on the other hand, argued that the assignments to Fidelity were invalid because Hargrove failed to give written notice of the intent to assign those interests as required by the partnership agreements.

With regard to count XI, Fidelity argued that it had a reasonable expectation of entering a business relationship with Old Intercounty based upon the assignment agreements and Hargrove's representations that Weglarz had received proper notice. Fidelity maintained that Weglarz's attempt to purchase the partnership interests from Intercounty with knowledge of the assignment to Fidelity therefore constituted tortious interference. Defendants responded that because there was no valid assignment to Fidelity of the partnership interests, Fidelity had no reasonable expectation of receiving any value from the purported assignments.

In support of its motion for summary judgment, Fidelity attached an affidavit from Weglarz dated January 7, 2004. In that affidavit, Weglarz stated that he did not receive written notice that Hargrove or Old Intercounty intended to assign Old Intercounty's partnership interests to Fidelity and that he did not consent to such assignments. Weglarz also stated that he had no knowledge of Fidelity's alleged interests in the partnerships or Old Intercounty's assignment to Fidelity prior to August 16, 2002, when counsel for Fidelity sent him a letter alleging that Fidelity had been assigned certain interests in the partnerships. Finally, Weglarz stated that he purchased Old Intercounty's interests in the partnership on August 7, 2001, in his capacity as trustee of the Jacob Weglarz 1985 trust.

Fidelity also attached to its motion for summary judgment excerpts from the discovery deposition of Hargrove's attorney, Daniel Meenan. Meenan testified that he informed Weglarz's

attorney that the partnership interests had been assigned to Fidelity before Weglarz's purchase of those partnership interests. According to Meenan, Capriotti approached him in July 2001 to solicit Hargrove's participation in the sale to Weglarz of Old Intercounty's 20% interest in the Westhaven partnership. Meenan advised Capriotti that Hargrove would not participate in the sale because Old Intercounty, acting through Hargrove, had already assigned those partnership interests to Fidelity. Hargrove subsequently transferred his interest in Wholesale Retail Services[2] to Capriotti and resigned as an officer of that corporation. Within a week of that transfer, Meenan received a telephone call from Skrodzki inquiring about the validity of those documents. During that conversation, Meenan explained to Skrodzki that the partnership interests had in fact been pledged to Fidelity.

Fidelity further attached excerpts from the deposition testimony of Hargrove and Weglarz. Hargrove testified that he spoke to Weglarz about the pledges to Fidelity at the time that the assignments were being "put together" but before the assignments were actually made. Although Weglarz stated that he did not want to be partners with Fidelity, Hargrove proceeded to assign the partnership interests. Weglarz testified that he had a conversation with Hargrove concerning assignment of the partnership interests to Fidelity, that during that conversation he indicated that he did not wish to be partners with Fidelity, and that this conversation triggered his interest in acquiring the partnership interests.

Fidelity also attached a letter dated June 13, 2000, from Weglarz to Hargrove, in which

---

[2]The record shows that on August 1, 1997, Old Intercounty changed its name to Wholesale Real Estate Services, Inc.

Weglarz acknowledged that Hargrove had recently advised him of his desire to assign Old Intercounty's 20% interests in the Westhaven partnership to Fidelity. Weglarz reiterated that he had told Hargrove that he would not consent to the assignment and instead preferred to buy out this interest pursuant to the partnership agreement. Weglarz also listed certain financial offsets he expected to receive if he were to purchase the 20% partnership interest.

Fidelity attached excerpts from the deposition testimony of Dale Kleszynski. Kleszynski testified that Weglarz contacted him in April or May 2000 and asked general questions about the process of evaluating a partnership interest. Kleszynski characterized the conversation with Weglarz as "academic" and "very general" in character. Kleszynski and Weglarz discussed the East Hazel Crest and Westhaven properties, and Weglarz indicated there was a possibility he would be acquiring the partnership interests. After that conversation, Klescynski asked Weglarz for financial documents on the properties and told Weglarz that he would look at "general data" and do a "minimal amount of work." Weglarz told Kleszynski that they were not engaged in an assignment and that he "just wanted some basic information." Kleszynski testified that Weglarz next contacted him in mid-October of 2000, and that during that conversation he "roughed out" an estimated value of the partnership interests.

Finally, Fidelity attached a letter dated October 29, 2000, from Kleszynski to Weglarz, in which Kleszynski provided a preliminary valuation of each property and an estimated value of each partnership interest.

Attached to defendants' motion for summary judgment were two documents entitled "Notice of Exercise of Purchase Option," dated May 25, 2001, and addressed to Intercounty Title

Company of Illinois. Each document gives notice that the Weglarz trust elects to purchase Intercounty's 10% and 20% interests in the East Hazel Crest and Westhaven partnerships pursuant to the financially distressed partner provisions of the partnership agreements. Also attached to defendants' motion was a bill of sale dated July 26, 2001, reflecting that Hargrove transferred to Capriotti all of his interest in Wholesale Real Estate Services. Defendants also attached two documents entitled "Bill of Sale and Assignment of Partnership Interest." Each document, entered into by the Weglarz trust, Wholesale Real Estate Services and Capriotti, reflects that the Weglarz trust purchased Intercounty's respective 10% and 20% interests in the East Hazel Crest and Westhaven partnerships pursuant to the distressed partner provisions of each partnership agreement.

Defendants also attached the following correspondence to its motion for summary judgment. In a letter dated August 16, 2002, Fidelity's counsel, Edwin Thomas, informed Weglarz that Wholesale Real Estate Services (formerly Intercounty Title Insurance) had assigned to Fidelity its respective 10% and 20% interests in the East Hazel Crest and Westhaven partnerships, and demanded all profits owed to Fidelity pursuant to the partnership agreements. In a letter dated August 22, 2002, Skrodzki advised Fidelity's counsel that Weglarz had not been aware of the purported assignment to Fidelity of Wholesale's interests in the partnerships until receipt of Thomas's August 16, 2002, letter, and that Weglarz had never consented to such an assignment. The letter also reiterated that Weglarz had purchased the partnership interests in August, 2001.

On May 26, 2006, the circuit court granted summary judgment in favor of the Weglarz

defendants on counts II, III and XI of Fidelity's third amended complaint.[3] With regard to counts II and III, the court found that the partnership agreements required written notice of the intent to assign a partnership interest, that Hargrove's failure to provide written notice constituted a material breach of the partnership agreements, and that the assignments to Fidelity were therefore invalid. With regard to count XI, the court concluded that there was no basis for Fidelity's expectation of receiving the partnership interests because Weglarz never received written notice from Hargrove, and that Weglarz's actions did not constitute purposeful interference because the partnership agreements afforded Weglarz the right to subsequently purchase the partnership interests of a financially distressed partner. This appeal followed.

We first consider defendants' argument that we lack jurisdiction to consider Fidelity's appeal. The record shows that at the time it filed its motion for summary judgment, Fidelity also filed a motion for default judgment requesting that judgment be entered in its favor and against Old Intercounty on count IX of the third amended complaint. Count IX asserted a breach of contract claim against Old Intercounty. Fidelity claimed that it had entered a valid contract in which Old Intercounty assigned to Fidelity its partnership interests in the East Hazel Crest and Westhaven partnerships and that Old Intercounty breached that contract by refusing to recognize Fidelity's right to the partnership interests.

The basis for Fidelity's motion for default judgment was that Old Intercounty had failed to appear or file an answer or other responsive pleading in this action. On May 26, 2006, the circuit

---

[3]Counts I and VII of Fidelity's third amended complaint were dismissed with prejudice on May 18, 2006, and are not part of this appeal.

court entered summary judgment in favor of defendants, and on June 1, 2006, Fidelity renewed its motion for a default judgment against Old Intercounty. On June 14, 2006, the circuit court entered an order declaring Old Intercounty in default for failing to appear, answer or otherwise plead. The court, however, declined to enter judgment against Old Intercounty on the breach of contract claim. The court also ordered Fidelty to give notice to Old Intercounty of the default judgment *instanter*. Thereafter, on June 19, 2006, Fidelity filed a motion for a finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the orders entered on March 4, 2005 (dismissing counts VIII and X of the third amended complaint), and May 26, 2006. Alternatively, Fidelity asked the court for the entry of a default judgment against Old Intercounty with respect to the breach of contract claim. The court granted Fidelity's motion and made the requisite Rule 304(a) finding on June 27, 2006. Fidelity filed its notice of appeal on July 5, 2006.

Defendants contend that the court's order of May 26, 2006, granting summary judgment in favor of defendants, was a final and appealable order and that Fidelity's notice of appeal, filed more than 30 days after entry of that order, was untimely and therefore failed to invoke the jurisdiction of this court. Defendants assert that count IX of the third amended complaint was premised on the assumption that there was a valid assignment between Old Intercounty and Fidelity and that the court's finding that no such valid assignment occurred was *res judicata* as to Fidelity's allegations in count IX and therefore effectively disposed of all controversies presented by the third amended complaint. Accordingly, defendants maintain that the court's Rule 304(a) finding was unnecessary and improper because it effectively extended the deadline for Fidelity to

file its notice of appeal. We disagree.

Rule 301 provides that "[e]very final judgment of a circuit court in a civil case is appealable as of right." 155 Ill. 2d R. 301. Rule 301, however, applies to appeals from cases in which the final order has disposed of the entire controversy between the parties. *In re Marriage of Sproat*, 357 Ill. App. 3d 880, 881 (2005); see also *Shermach v. Brunory*, 333 Ill. App. 3d 313, 316-17 (2002) ("A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment"). In this case, the circuit court's order granting summary judgment in favor of defendants did not dispose of the entire controversy between the parties because it left outstanding the breach of contract claim against Old Intercounty. Although the court subsequently declared Old Intercounty in default, it did not enter a default judgment. An order of default is not a final judgment or an interlocutory order appealable as of right because it does not dispose of the case and determine the rights of the parties. *Burton v. Autumn Grain Transport, Inc.*, 222 Ill. App. 3d 755, 756 (1991). Rather, an order of default is simply an interlocutory order that precludes the defaulting party from making any additional defenses to liability but in itself determines no rights or remedies. *Wilson v. Teloptic Cable Construction Co.*, 314 Ill. App. 3d 107, 111 (2000). It is the entry of a default judgment, which the court did not enter in this case, that terminates the litigation and decides the dispute. *Wilson*, 314 Ill. App. 3d at 111-12.

Therefore, in this case, without the entry of a judgment against Old Intercounty disposing of count IX of the complaint, all previous orders, including the order granting summary judgment, were interlocutory and could not be appealed without a finding by the court, pursuant to Rule

1-06-1895

304(a), that there was no just reason to delay appeal. 210 Ill. 2d R. 304(a). Accordingly, on June 19, 2006, Fidelity filed a motion asking the court to make the requisite Rule 304(a) finding, and the court granted that motion on June 27, 2006. Rule 304(a) requires that plaintiff's notice of appeal be filed within 30 days of the entry of the required Rule 304(a) finding. 210 Ill. 2d R. 304(a). Fidelity's notice of appeal was filed on July 5, 2006, within 30 days of the court's Rule 304(a) finding, and was therefore timely and properly invoked the jurisdiction of this court. According, we have jurisdiction to consider Fidelity's appeal.

We disagree with defendants' argument that the court's order granting summary judgment in favor of defendants was *res judicata* as to the allegations in count IX of the third amended complaint and therefore effectively disposed of the entire controversy between the parties. For *res judicata* to apply, there must be, among other things, a final judgment on the merits. *Pelon v. Wall*, 262 Ill. App. 3d 131, 135 (1994). For purposes of *res judicata*, a judgment is not final until the possibility of appellate review has been exhausted. *Pelon*, 262 Ill. App. 3d at 135. Here, appellate review of the court's order granting summary judgment had not been exhausted at the time Fidelity filed its motion for a Rule 304(a) finding and, accordingly, *res judicata* would not apply to count IX of Fidelity's third amended complaint. Moreover, when an order of default is entered, the defaulting party must be given notice to allow it to promptly vacate the order and avoid a final judgment. *Wilson*, 314 Ill. App. 3d at 112-13. Therefore, in this case, even after the order of default was entered, Old Intercounty had the opportunity to appear and move to vacate that order. Under these circumstances, we find that Fidelity was required to motion the court for a Rule 304(a) finding and that the court's order granting that motion did not improperly extend

-14-

1-06-1895

the time for Fidelity to file its notice of appeal.

We next consider Fidelity's argument that the circuit court erred in granting summary judgment in favor of defendants on counts II, III and XI of the third amended complaint.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). In determining whether the moving party is entitled to summary judgment, the pleadings and evidentiary material in the record must be construed strictly against the movant. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). The circuit court's decision to grant or deny a motion for summary judgment is reviewed *de novo*. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 470-71 (2001).

Moreover, when, as in this case, the parties file cross-motions for summary judgment, they invite the court to decide the matter as a question of law. *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 134 (2001). However, if a genuine issue of material fact precluding judgment for either party exists, summary judgment should not be granted to either party. *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 36 (2002).

Fidelity initially contends that the circuit court erred in granting summary judgment in favor of defendants on counts II and III of the third amended complaint. In count II and III of its third amended complaint, Fidelity alleged that pursuant to Hargrove II, Hargrove and ITI assigned to Fidelity its respective 10% and 20% equity interests in the East Hazel Crest and

Westhaven partnerships and that, pursuant to the East Hazel Crest and Westhaven assignments, Old Intercounty assigned to Fidelity all of its right, title and interest in all distributions of monies or other property from the partnerships.  In both counts, Fidelity sought a declaratory judgment that these assignments were valid and enforceable and that any interest that Weglarz purported to obtain in the partnerships was invalid.

The East Hazel Crest and Westhaven partnership agreements contain the following provisions which are relevant to this appeal.  Paragraph 10 of the partnership agreements provides that "[s]hould any Partner hereunder desire to sell, assign, transfer or convey his interest in the partnership, said Partner agrees to notify the remaining Partners in writing of his intention to do so.  The remaining Partners will then have the right to purchase said partnership interest ***."  Paragraph 10 also sets forth the procedures for exercising a partner's right of first refusal and for valuing the partnership interests.  Section A of paragraph 10 provides that the value of the partnership interest shall be determined by the average of values established by three appraisers, and specifically states that "[t]he selling Partner and the non-selling Partner shall have thirty (30) days from the date the written intention to sell is received by the non-selling Partner to appoint an appraiser to act on his behalf.  In the event that any party fails to make such appointment, then the valuation made by the sole appraiser properly appointed shall be binding upon the parties."  Section A further provides that such appraisers shall have 45 days from the date they are appointed to deliver their appraisals.  Section B of paragraph 10 states that "[t]he non-selling partner shall exercise the option to purchase, in writing, within forth-five (45) days after receipt of the written average of values set forth in the preceding subparagraph."  Section C of paragraph 10

provides for closing within 45 days after written exercise of the option to purchase the partnership interest.

Paragraph 18 of the partnership agreements states that "all notices required hereunder shall be in writing and shall be sent by Certified or Registered Mail." Paragraph 11 states that "[a]ny transfer, assignment or other alienation of the interest of a Partner which is in violation of the terms and conditions of Paragraph 10 of this instrument shall be considered as null and void and of no legal effect."

Finally, paragraph 9 of the partnership agreements provides that should any partner become financially distressed, "the remaining partner or partners will then have an option to purchase said partnership interest."

In urging reversal of the summary judgment entered in favor of defendants on counts II and III of its third amended complaint and the denial of its own motion for summary judgment, Fidelity argues that the circuit court erred in holding, as a matter of law, that lack of written notice rendered the assignments to Fidelity invalid. Fidelity does not dispute that Weglarz did not receive written notice of Old Intercounty's intent to assign its partnership interests. Rather, Fidelity maintains that it was validly assigned the partnership interests because Weglarz received oral notice of Old Intercounty's intent to assign its partnership interests to Fidelity and the lack of written notice constituted mere technical noncompliance with the partnership agreements. Alternatively, Fidelity maintains that summary judgment in favor of defendants was improper because a genuine issue of material fact exists as to whether Weglarz had actual notice of Old Intercounty's intention to assign the partnership interests.

The primary question before us is whether the partnership agreements required strict compliance with the written notice provisions. In general, the construction or interpretation of a contract is a matter to be determined by the court as a question of law. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005). When construing the language of a contract, our primary objective is to give effect to the intent possessed by the parties at the time they entered the agreement. *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 277 (2007). The agreement is to be interpreted as a whole and, when possible, effect and meaning must be given to every provision in the contract. "Where the terms of a contract are clear and unambiguous, they will be given their natural and ordinary meanings." *Thakral v. Mattran*, 156 Ill. App. 3d 849, 854 (1987). In the absence of an ambiguity, the parties' intent is ascertained solely from the words of the contract itself, and we will not interpret a contract in a manner that would nullify or render provisions meaningless or that is contrary to the plain and obvious meaning of the language used. *Thakral,* 156 Ill. App. 3d at 854; *Regency Commercial Associates, LLC,* 373 Ill. App. 3d at 277.

In this case, we conclude, as a matter of law, that the parties were required to strictly comply with the written notice provision of the partnership agreements. That the parties intended this requirement to be a material provision of the partnership agreements is reflected in the language of the agreements themselves, which clearly and unambiguously requires that any partner seeking to assign his partnership interests must provide the remaining partners with written notice of his intention to do so. Additionally, the general notice provisions in the partnership agreements state that "all notices required hereunder shall be in writing and shall be

sent by Certified or Registered Mail." Moreover, the sections of the partnership agreements setting forth the procedures for exercising the right of first refusal make repeated reference to the written notice requirement. For example, the agreements provide that the selling and nonselling partners each must appoint an appraiser to value the partnership interests within 30 days "from the date the written intention to sell is received." The nonselling partner is required to exercise his option to purchase "in writing," and closing must occur within 45 days of the "written" exercise of the option to purchase.

Additionally, other sections of the partnership agreements incorporate the same written notice requirement. For example, paragraph 8 of the partnership agreements provides that, in the event that the interest of any partner becomes diluted or diminished, the remaining partners have the right to purchase that diminished interest. To exercise this option, the purchasing partner must serve "notice in writing" of his intention to do so upon the nonpurchasing partner. Paragraph 9 of the partnership agreements allows the partners to purchase the interest of any financially distressed partner. To exercise this option, the purchasing partner is also required to serve written notice of his intention to do so upon the nonpurchasing partner. We believe that these additional sections of the partnership agreements, and their incorporation of the written notice requirement, demonstrate that the parties contemplated and intended that any notice required by the partnership agreements would be given in writing and could not be accomplished orally.

It is well settled that when parties agree to and insert language into a contract, the presumption is that it was done purposefully and the language employed is to be given effect.

*Regency Commercial Associates, LLC,* 373 Ill. App. 3d at 277. In this case, the language of the partnership agreements clearly provides for written notice. To require less would not give effect to the parties' intent and would place a construction upon the partnership agreements that is contrary to the plain and obvious meaning of the language used. We therefore decline to do so.

In coming to this conclusion, we find the present case similar to *Thakral*. In that case, the court strictly construed a notice provision in a real estate contract requiring the purchaser to give "written notice" via "certified or registered mail" by a specified date to the seller if the purchaser was unable to obtain a mortgage commitment. *Thakral*, 156 Ill. App. 3d at 854. In finding that neither the oral notice provided by the buyers' attorney to the seller's attorney nor the written notice mailed on the date specified in the contract but received one day later was sufficient, the court held that service of a notice pursuant to a provision in a contract must be "in compliance with the plain and ordinary meaning of the language used." *Thakral*, 156 Ill. App. 3d at 856; *cf. Myers v. Popp Enterprises, Inc.*, 216 Ill. App. 3d 830, 836-37 (1991) (allowing for less than strict compliance with a notice provision where, unlike in *Thakral*, there was no plain and ordinary meaning of the notice provision in the parties' contract). Here, too, we interpret the plain and ordinary meaning of the terms used in the partnership agreements to require written notice and find that the parties were required to comply with this provision to effectuate any assignment of a partnership interest.

We recognize the principle cited by Fidelity that the object of a notice provision in a contract is to ensure that a party is actually informed. See *Bloom Township High School v. Illinois Commerce Comm'n*, 309 Ill. App. 3d 163, 180 (1999). However, the specific facts of this

case convince us that strict compliance with the written notice provision was required. In addition to the parties' clear and unambiguous language, already discussed above, the time-sensitive nature of exercising the right of first refusal and valuing the partnership interests supports our conclusion that the written notice requirement is a material provision of the partnership agreements. As set forth in the partnership agreements, the entire process by which a partner exercises his right of first refusal begins on the date that written notice is received. The selling and nonselling partners each have 30 days "from the date the written intention to sell is received" to appoint an appraiser to value the partnership interest. Both appraisers must then mutually agree on a third appraiser, and the value of the partnership interests is determined by the average of values established by the three appraisers. If, however, either party fails to appoint an appraiser within the 30-day time limit, then the valuation made by the sole properly appointed appraiser becomes binding upon the parties. The appraisers must deliver the average of values of the partnership interest 45 days from the date that the last appraiser is appointed. The nonselling partner must exercise his option to purchase, "in writing," within 45 days after receipt of the written average of values, and closing must take place within 45 days after written exercise of the option to purchase. Finally, any purported acquisition of a partnership interest that does not comply with the terms of the partnership agreements is null and void.

We believe the foregoing underscores the need to require strict compliance with the written notice provision. The written notice requirement gives the nonselling partner a clear declaration of the selling partner's intent to assign his interests and avoids the ambiguous nature of oral notice. The written notice also gives the nonselling partner a fixed time frame within

which to appoint an appraiser and, ultimately, decide whether to purchase the partnership interest. The ambiguous nature of oral notice creates the risk that the nonselling partner will misinterpret a purported oral notice, fail to appoint an appraiser, and thereby lose the bargained for benefit of purchasing the partnership interests at a fair price as determined by the value of three appointed appraisers. The written notice requirement safeguards the partners from such risks, and it would be imprudent for this court to strip this layer of contractual protection away from one partner when it was agreed to by all at the partnership's inception. Fidelity characterizes requiring written notice as "unfair" and points out that it was not in a position to provide such notice. However, the partnership agreements, which were available to Fidelity, clearly require written notice, and neither Weglarz nor any other defendant in this case represented to Fidelity that written notice had in fact been given. Accordingly, it was not defendants who placed Fidelity in its current position.

It is undisputed in this case that Weglarz did not receive written notice of Old Intercounty's intent to assign its partnership interests to Fidelity. In light of our holding that written notice was a material provision of the contract, as well as paragraph 11 of the partnership agreements, which states that any assignment that does not comply with the terms of the partnership agreement is null and void and of no legal effect, we conclude that Old Intercounty's assignment of its partnership interests to Fidelity was invalid and had no legal effect. Therefore, the circuit court did not err in granting summary judgment in favor of defendants on counts II and III of the third amended complaint.

In reaching this conclusion, we find that the cases relied upon by Fidelity in which written notice was purportedly excused are distinguishable from the present case and do not compel us to

find that oral notice would have been sufficient in this case. In *Bloom Township High School*, 309 Ill. App. 3d at 180, the relevant agreement between the parties did not in fact require written notice. *Campbell v. Cook County Sheriff's Merit Board*, 215 Ill. App. 3d 868, 870-71 (1991), involved a defendant's claim that his due process rights were violated because, although he received oral notice, he did not receive written notice of the hearing that preceded his termination. In *Rogers v. Balsley*, 240 Ill. App. 3d 1005 (1993), timely written notice was sent to the seller's attorney instead of the seller's home address as required by the contract, and plaintiffs were aware of the notice sent to their attorney. Finally, in *Loeff v. Meyer*, 284 Ill. 114, 115-16 (1918), a real estate contract required written notice of any construction on a parcel of property and, although written notice was not sent, the owner was present at the property, witnessed the construction, and permitted it to continue without objection.

Unlike the present case, in none of the cases cited by Fidelity did the court find that the written notice requirement was a material provision of the contract with which the parties were required to strictly comply. Moreover, the potential for prejudice in those cases from receiving improper notice is not equivalent to that presented by the facts of this case. In none of the cases relied upon by Fidelity did the receipt of written notice begin the time-oriented process of valuing the partnership interests and exercising the right of first refusal. It is this process, and the potential for prejudice resulting from the lack of written notice, that distinguishes the present case from those cited by Fidelity and compels us to hold that the parties were required to strictly comply with the written notice provision.

Fidelity also argues that Weglarz did not properly exercise his right of first refusal and that

any purported transfer of the partnership interests to him was therefore invalid. The record shows, however, that Weglarz purchased the partnership interests pursuant to the financially distressed partner provision of the partnership agreements. Fidelity advances no argument that Weglarz did not properly follow the procedures for purchasing the partnership interests pursuant to that provision. A point raised on appeal that is not supported by argument is waived under Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)). McCarthy v. Denkovski, 301 Ill. App. 3d 69, 74 (1998). Accordingly, Fidelity's contention is waived.

Fidelity also argues that Weglarz's conduct demonstrates that he received oral notice of Old Intercounty's intent to assign its partnership interests. Although we disagree with Fidelity on this point, we need not consider this argument in light of our holding that the parties were required to strictly comply with the written notice provision and that anything less than written notice was insufficient to effectuate an assignment of the partnership interests.

We next consider Fidelity's argument that the circuit court erred in granting summary judgment in favor of defendants on count XI of the third amended complaint, which asserted a claim of tortious interference with prospective business relationship. In count XI, Fidelity asserted that it had a reasonable expectation that Old Intercounty would take all necessary steps to effectuate the assignment of its interests in the East Hazel Crest and Westhaven partnerships to Fidelity, that defendants were aware of Fidelity's expectations with regards to these assignments, and that defendants intentionally and unjustifiably interfered with this expectancy by attempting to purchase the partnership interests from Old Intercounty.

In seeking reversal of the summary judgment entered in favor of defendants on count XI,

Fidelity reiterates that it reasonably expected to receive a valid assignment from Old Intercounty, that Weglarz was aware of this expectancy, and that he purposefully interfered with the expectancy by purporting to buy the same partnership interests and by failing to distribute any partnership income or assets to Fidelity.

To establish a cause of action for tortious interference with prospective business relations, plaintiff must prove: (1) a reasonable expectancy of entering into a valid business relationship; (2) defendants' knowledge of that expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from defendants' interference. *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 380 (2004).

When considering a claim of tortious interference with business expectancy, the focus is on the conduct of the party interfering with the expectancy. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484 (1998). To prevail on a claim, it is insufficient for plaintiff to merely show that defendant interfered with a business expectancy. *Dowd & Dowd*, 181 Ill. 2d at 485. Instead, plaintiff must show "purposeful" or "intentional" interference, which refers to some impropriety committed by the defendant in interfering with plaintiff's business expectancy. *Romanek v. Connelly*, 324 Ill. App. 3d 393, 406 (2001); *Dowd & Dowd*, 181 Ill. 2d at 485; see also Restatement (Second) of Torts §766B, Comment *a*, at 20 (1979) ("In order for the actor to held liable, this Section requires that his interference be improper"). In other words, plaintiff must show that defendant acted intentionally with the purpose of injuring the plaintiff's expectancy. *Romanek,* 324 Ill. App. 3d at 407. As this court has stated, "[t]o the extent that a party acts to

enhance its own business interests, it has a privilege to act in a way that may harm the business expectancy of others and that privilege is greater [] where *** no contract exists between the plaintiff and the entity with which the business relationship is anticipated." *Curt Bullock Builders, Inc. v. H.S.S. Development, Inc.*, 225 Ill. App. 3d 9, 16 (1992).

In this case, we conclude, as a matter of law, that Fidelity is unable to establish that Weglarz acted improperly or with the intent to injure Fidelity's business expectancy. Fidelity's argument to the contrary is premised on the assumption that Weglarz purchased the partnership interests by exercising his right of first refusal. However, the record shows that Weglarz purchased the partnership interests pursuant to the financially distressed partner provisions of the East Hazel Crest and Westhaven partnership agreements. Those provisions provide each partner with the option to purchase the partnership interest of any financially distressed partner. The partnership agreements set forth the procedures for exercising that option, and Fidelity advances no argument that Weglarz did not properly follow those procedures. Weglarz's conduct was therefore an entirely proper means by which to purchase the partnership interests, and there is simply no evidence in the record to suggest that he acted improperly or with the aim of injuring Fidelity's expectancy. *Romanek*, 324 Ill. App. 3d at 406 (dismissing claim of tortious interference with prospective business relationship where plaintiff failed to specify any action on the part of defendant that had the purpose of thwarting plaintiff's expected business relationship); see also *Belden Corp. v. Internorth, Inc.*, 90 Ill. App. 3d 547, 552 (1980) (noting that a party with a prospective business relationship "must allow for the rights of others" and therefore has "no cause of action against a bona fide competitor unless the circumstances indicate unfair competition").

1-06-1895

Accordingly, we find that the circuit court did not err in granting summary judgment in favor of defendants on count XI.

We finally consider Fidelity's argument that the circuit court erred in dismissing count VIII of its third amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)). Count VIII of the third amended complaint asserted a claim against defendants for tortious interference with contractual relationship. In count VIII, Fidelity argued that it, Hargrove and Old Intercounty had entered into a valid contract by which Old Intercounty assigned to Fidelity its interests in the East Hazel Crest and Westhaven partnerships, that defendants were aware of this assignment, and that, notwithstanding this knowledge, defendants purported to assign those same partnership interests to Weglarz and thereby intentionally and unjustifiably induced Old Intercounty to breach its contract with Fidelity.

In ruling on a section 2-615 motion to dismiss for failure to state a cause of action, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts that are favorable to the plaintiff. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004). A cause of action should be dismissed pursuant to section 2-615 only if it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to recover. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004). Our review of a dismissal pursuant to section 2-615 is *de novo*, and we may affirm upon any grounds appearing in the record. *Paul H. Schwendener Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 71 (2005).

We conclude that Fidelity cannot maintain an action for tortious interference with contractual relationship. As Fidelity acknowledges, a claim for tortious interference with

-27-

contractual relationship requires, among other things, the existence of a valid and enforceable contract between the plaintiff and a third party. *Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 727 (2004). In light of our holding that there was no valid assignment of the partnership interests between Fidelity and Old Intercounty, Fidelity's claim for tortious interference with contract cannot stand and we therefore affirm the dismissal of count VIII of the third amended complaint.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

J. GORDON and O'MALLEY, JJ., concur.