2026 IL App (1st) 250925-U

No. 1-25-0925

Order filed June 25, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MAUZKIE ERVIN, Individually and as Independent Administrator for the Estate of Pauline Fleming, Deceased, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | Appeal from the Circuit Court of |
| v. | ) ) | Cook County |
| ADVOCATE SOUTH SUBURBAN HOSPITAL, CRESTWOOD REHABILITATION CENTER, SHANITA Q.T. STRAW, Individually and d/b/a GOLDEN LAW, | ) ) ) ) ) | No. 2023 L 10525 Honorable Michael B. Barrett, Judge Presiding. |
| Defendants | ) ) | |
| (Shanita Q.T. Straw, Individually and d/b/a Golden Law, | ) ) | |
| Defendant-Appellee). | ) | |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly granted defendant's section 2-615 motion to dismiss plaintiff's claims against defendant, with prejudice.

¶ 2    This appeal arises from the circuit court's dismissal, with prejudice, of plaintiff Mauzkie Ervin's first amended complaint against defendant, Shanita Straw, an attorney, for professional malpractice, negligent infliction of emotional distress (NIED), intentional infliction of emotional distress (IIED), and wrongful death. Ervin contends that the first amended complaint stated legally cognizable claims, dismissal with prejudice was improper, and the court abused its discretion when it disregarded evidentiary materials. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Following the death of Ervin's mother, Pauline Fleming, Ervin filed a wrongful death action against several defendants. He brought the complaint individually and as independent administrator of the estate of his mother. One of the defendants was Shanita Straw, individually and doing business as Golden Law. Ervin alleged the following facts in his initial complaint.

¶ 5    Fleming died on November 28, 2022, at Crestwood Rehabilitation Center (Crestwood), at 88 years old. She had two adult children at the time of her death: Ervin and his sister. In 2013, Ervin quit his job to serve as the primary caregiver for his mother. In 2015, Fleming executed both a power of attorney for health care and an advance health care directive, naming Ervin as her agent and dictating the manner of her future care.

¶ 6    On October 11, 2022, Fleming was admitted to Advocate South Suburban Hospital for an infection. Ervin documented several complaints he had about her care at the hospital. On October 20, 2022, Ervin was informed by the hospital staff that he could not visit his mother anymore, and to contact Catholic Charities for further information. He later learned that he had been banned for "inappropriately touching his mother under her covers," but alleged that he was assisting her with her detached catheter.

¶ 7    On October 31, 2022, Straw filed a petition seeking the appointment of the Office of the State Guardian (OSG) as a temporary guardian of Fleming, an alleged person with a disability, along with an emergency notice of motion setting the matter for a hearing on November 4, 2022. Ervin alleged that Straw failed to send Ervin, or his sister, notice of the pending petitions until November 10, 2022, when he was mailed the documents.

¶ 8    At the hearing on the emergency motion for the temporary guardianship on November 4, 2022, the court entered an order naming the OSG as the temporary guardian for Fleming. Ervin claimed that the petition inaccurately stated that Fleming did not have a power of attorney for health care.

¶ 9    On November 23, 2022, Ervin filed an emergency motion for a temporary restraining order, seeking to overturn the temporary guardianship order and prevent the OSG from "taking his mother to a nursing home to die." Ervin's emergency motion was set to be heard on November 28, 2022.

¶ 10    On November 23, 2022, Ervin called the hospital to check on his mother and was informed that she had been transferred to Crestwood. The next day, Ervin provided a false name to Crestwood staff so that he could visit his mother. He alleged that he repeatedly requested a feeding tube for his mother, but Crestwood refused.

¶ 11    On November 28, 2022, Ervin appeared for the hearing on his motion for a temporary restraining order, but no other parties appeared and the motion was continued to November 30, 2022. Later that day, Ervin was informed that his mother had passed away. Her cause of death was "multi-organ failure with sepsis and dehydration."

¶ 12    The counts against Straw in Ervin's complaint were as follows. He alleged a claim for "violation of the Guardianship and Advocacy Act" by having a guardian appointed on Fleming's

behalf when she had previously executed a power of attorney designating Ervin as her agent. The second one was for "professional negligence and malpractice." It alleged that Straw was a licensed attorney retained to represent Catholic Charities in this matter. Straw failed to notify Ervin or his sister of the petitions she had filed until November 10, 2022. Straw sought to prevent Ervin from asserting his rights to be the temporary guardian of Fleming. Due to Straw's failure to notify Ervin, the OSG was wrongfully appointed as Fleming's guardian.

¶ 13     The next count, which was against all defendants including Straw, was for NIED. It alleged that Straw owed a duty of competence to Fleming, and a duty to act with reasonable care and skill. Straw breached her duty to Fleming "by failing to accurately convey details concerning the Power of Attorney and Advance Health Care Directive to the Court." As a result, the OSG was wrongfully appointed as Fleming's guardian.

¶ 14     The fourth count was for IIED, against all defendants including Straw. It alleged that the refusal to honor Fleming's power of attorney and advance health care directive was unreasonable and not justified. Defendants disregarded the probability of causing emotional distress. Ervin was banned from the hospital and deliberately excluded from decisions made on his mother's behalf. As a result, Fleming suffered from dehydration and died.

¶ 15     The next count against Straw was for wrongful death, which was also against all defendants. It alleged that defendants collectively caused Fleming's death and their actions were "in direct contravention of the wishes of Pauline Fleming as set forth in her Power of Attorney for Health Care and her Advance Directive." Evin also made damages claims pursuant to the Survival Act (755 ILCS 5/27-6 (West 2022)). He also alleged a claim against all defendants for "Funeral Expenses."

¶ 16    On March 11, 2024, Straw filed a motion to dismiss Ervin's complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)). She alleged that there was no legally recognized civil cause of action based upon alleged misconduct in a prior, separate litigation. She stated that Ervin did not allege facts supporting an imposition of a duty owed by Straw to either Ervin or Fleming, as she was an attorney retained by Catholic Charities. She also argued that Ervin failed to allege facts to establish Fleming's death was proximately caused by any act or omission by Straw.

¶ 17    The trial court entered an order on November 20, 2024, granting the motion to dismiss, without prejudice, the legal malpractice, IIED, NIED, wrongful death, and Survival Act claims against Straw. The court dismissed the "Funeral Expenses" and "Violation of Guardianship and Advocacy Act" claims with prejudice. In its written order, the court stated that Ervin did not allege sufficient facts to establish that but for Straw's behavior, Ervin would have been appointed guardian. It stated that the existence of a health care directive does not control, but rather it would have been Fleming's best interests that would control the outcome. Therefore, Ervin had to plead that if the court had considered the directive, the OSG would not have been appointed.

¶ 18    The court, in addressing the IIED, NIED, and wrongful death claims, stated that the claims were insufficiently pled. For NIED, Ervin did not allege physical harm, or that he was a bystander to harm. In his IIED claim, Ervin did not allege Straw's behavior to be extreme or outrageous. In the wrongful death claim, Ervin stated that Straw's conduct was egregious but did not make allegations as to what that conduct was or how it resulted in her death.

¶ 19    On January 10, 2025, Ervin filed a first amended complaint. The claims against Straw were substantially the same. Ervin alleged that he would have been appointed guardian if the court had considered the health care directive because there was no basis to assume Ervin had inappropriately

touched Fleming. For the NIED claim, Ervin alleged that he suffered damages by being forced to watch his mother be subjected to inappropriate care. As for IIED, Ervin alleged that Straw's refusal to honor Fleming's health care directive was "extreme and intolerable," and the OSG was wrongfully appointed as Fleming's guardian. Finally, in his wrongful death claim, Ervin stated that as a result of Straw's lack of diligence, the OSG was appointed as Fleming's guardian, which ultimately led to her death since she was not given proper nutrition at the nursing home. Ervin stated that as a "result of [Straw's] egregious conduct," the family is entitled to compensation.

¶ 20    On February 5, 2025, Straw filed a motion to dismiss, with prejudice, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)). Ervin filed a response to Straw's motion to dismiss on March 6, 2025, arguing that Straw failed to meet her burden. Ervin stated that if any part of the first amended complaint was deficient, he requested leave to amend the complaint.

¶ 21    On April 16, 2025, the court, in a written order, stated that, "[f]or the reasons stated in open court and as reflected in the Court's November 20, 2024, dismissal order," Straw's motion to dismiss is granted, with prejudice.[1] Because Ervin's claims against the other two defendants are still pending, the court included Rule 304(a) language, stating there was no just reason for delaying the enforcement or appeal of the dismissal order. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both.").

¶ 22                                II. ANALYSIS

---

[1] There is no report of proceedings in the record on appeal.

¶ 23    On appeal, Ervin contends that his first amended complaint sufficiently pled legal malpractice, IIED, NIED, wrongful death, and a survival action against Straw. Straw maintains that the trial court properly granted her motion to dismiss where Ervin failed to state claims for each of the counts against her.

¶ 24    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects that are apparent on the face of the complaint. 735 ILCS 5/2-615(a) (West 2024). The crucial inquiry in ruling upon a section 2-615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Association v. Hoffman Group, Inc*., 186 Ill. 2d 419, 424 (1999). When ruling on a section 2-615 motion to dismiss, a trial court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from those facts, but a court cannot accept as true mere conclusions that are unsupported by specific facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. A dismissal under section 2-615 is reviewed *do novo*. *Id.*  A trial court's grant of a section 2-615 motion to dismiss may be affirmed by the appellate court on any basis supported by the record. *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007).

¶ 25                                      A. Legal Malpractice

¶ 26    The first count against Straw in Ervin's first amended complaint was for legal malpractice. For a plaintiff to prevail on a legal malpractice claim, he must plead and prove that his counsel owed him a duty arising from the attorney-client relationship, that counsel breached that duty, and that as a proximate cause of that breach, he suffered an injury. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225 (2006). The attorney's negligence must have proximately caused

damages to the plaintiff for him to prevail on a legal malpractice count. *Id.* The plaintiff's burden is to plead "facts which, if true, establish a proximate causal relationship between the negligence of the attorney and the damages alleged to have been suffered as a consequence thereof." *Metrick v. Chatz*, 266 Ill. App. 3d 649, 654 (1994).

¶ 27 Ervin contends that while Straw was retained by Catholic Charities, Fleming was an intended third-party beneficiary of the attorney-client relationship between Straw and Catholic Charities. The alleged breach of duty was a failure to notify Ervin of the emergency hearing for temporary guardianship of Fleming. Ervin alleged that because of this omission, the OSG was wrongfully appointed guardian of Fleming. Ervin contends that these were well-pled allegations in his first amended complaint and, if taken as true, state a legally cognizable claim for legal malpractice.

¶ 28 To the extent that Ervin sought to recover damages on his own behalf in the first amended complaint, based on legal malpractice, there would first need to be a duty between Straw and Ervin. "The traditional, general rule has been that the attorney is liable only to his client, not to third persons." *Pelham v. Griesheimer*, 92 Ill. 2d 13, 19 (1982). Here, Ervin alleges that Straw was hired by Catholic Charities and that Straw had an attorney-client relationship with Catholic Charities, not Ervin. Ervin did not allege any facts in his first amended complaint that would support the proposition that he was a client of Straw's.

¶ 29 A duty may be owed to a nonclient under the limited exception where the nonclient is a third-party beneficiary of the attorney-client relationship. *Id.* at 21 ("to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship."). In the first amended complaint, Ervin merely states that Fleming "was an intended

third-party beneficiary of Defendant Straw and Catholic Charities' attorney-client relationship." This is a conclusory allegation and is unsupported by specific facts. *Visvardis v. Ferleger*, 375 Ill. App. 3d 719, 724 (2007) ("the court will not admit conclusions of law and conclusory allegations not supported by specific facts.").

¶ 30    Even if we were to find that Ervin provided sufficient facts to support the allegation that Fleming was a third-party beneficiary of the attorney-client relationship between Straw and Catholic Charities, he failed to sufficiently plead proximate cause. A legal malpractice action is by its nature dependent upon a predicate lawsuit. *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 122 (1986). Thus, a legal malpractice claim presents a "case within a case." *Id*. When a court determines guardianship, "the disabled person's preference as to who should be his or her guardian is outweighed by what is in the disabled person's best interest." *In re Estate of Doyle*, 362 Ill. App. 3d 293, 303 (2005). Here, Ervin did not allege sufficient facts to establish that but for Straw's actions, Ervin would have been appointed as Fleming's guardian. The existence of the advance health care directive does not control who Fleming's guardian is at an emergency hearing for guardianship. The record reveals that Ervin had been banned by the hospital from visiting Fleming due to allegations of inappropriate behavior by Ervin. Nothing in the first amended complaint supported Ervin's conclusion that if he had been present at the hearing, the probate court would not have appointed the OSG as guardian. Accordingly, because he failed to sufficiently plead proximate cause, his legal malpractice claim was properly dismissed pursuant to section 2-615 of the Code.

¶ 31                    B. Intentional Infliction of Emotional Distress

¶ 32    Ervin's IIED argument on appeal, in its entirety, other than one sentence listing the elements of the claim, is as follows:

"The First Amended Complaint alleges that Straw's conduct was extreme, intentional, and foreseeably caused severe emotional distress to Fleming and her family. These allegations, taken as true, satisfy the elements of IIED and withstand a Section 2-615 motion."

¶ 33    While our review of the grant of a section 2-615 motion to dismiss is *de novo*, that standard does not relieve a plaintiff of his duties to clearly define the issues, cite to pertinent authority, and present a cohesive legal argument. See *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. "Mere contentions, without argument or citation to authority, do not merit considerations on appeal." *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 12. The "appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a clear statement of contentions with citation of the authorities relied on. The rule is not merely a suggestion but necessary for proper and efficient administration of the courts. *Eberhardt v. Village of Tinley Park*, 2024 IL App (1st) 230130, ¶ 60. Issues that are insufficiently presented do not satisfy the rule and are considered forfeited. *Id*.

¶ 34    Forfeiture notwithstanding, for an IIED claim, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended for her conduct to cause severe emotional distress or knew there was a high probability her conduct would cause severe emotional distress, and (3) the defendant's conduct caused severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 269 (2003).

¶ 35    Ervin's first amended complaint alleged that the "extreme and intolerable" conduct by Straw was her "refusal to honor Fleming's Power of Attorney and Advance Health Care Directive," and her failure to notify Fleming's family of the court proceedings. Ervin alleged that

as a result, the OSG was wrongfully appointed as Fleming's guardian, and Fleming was transferred to a nursing home where she later died. This caused Ervin "emotional distress."

¶ 36    A claim for IIED is sufficient only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 51. Ervin does not cite to any authority supporting the proposition that failure to notify next of kin of an emergency hearing in a guardianship case constitutes conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of human decency. Moreover, Ervin's allegation that the OSG would not have been appointed guardian of Fleming if Straw had notified Ervin of the emergency hearing, is conclusory and unsupported by specific facts. *Patrick Engineering*, 2012 IL 113148, ¶ 31 (a court cannot accept as true mere conclusions that are unsupported by specific facts). Accordingly, the trial court properly granted Straw's motion to dismiss the IIED claim.

¶ 37                    C. Negligent Infliction of Emotional Distress

¶ 38    Ervin's NIED argument on appeal, in its entirety, other than one sentence listing the elements of the claim, is as follows: "[Ervin] alleges that Straw's conduct foreseeably caused emotional trauma, meeting [the elements of NIED]." He does not cite to any paragraphs of his first amended complaint where he alleged any facts to support any of these elements. This issue has been forfeited on appeal where no pertinent authority has been cited to, and no cohesive legal argument has been presented. See *Eberhardt*, 2024 IL App (1st) 230139, ¶ 60.

¶ 39                    D. Wrongful Death and Survival Action

¶ 40    Ervin's wrongful death argument on appeal is as follows:

"The Illinois Wrongful Death Act (740 ILCS 180/1 *et seq.*) authorizes an action when death is caused by wrongful act, neglect, or default. [Ervin] alleged Straw's conduct caused Pauline Fleming's death, resulting in damages to her next of kin."

¶ 41    Ervin does not say what conduct by Straw caused Fleming's death, or what damages her next of kin sustained.

¶ 42    For his Survival Act claim, Ervin states, "Pauline Fleming had valid claims arising from Straw's conduct before her death, which her estate may now pursue. The First Amended Complaint properly alleges these claims, and dismissal was erroneous," citing only his original complaint. Ervin does not say what the claims were that Fleming had against Straw before her death.

¶ 43    Again, these arguments are simply not sufficiently presented for review and are therefore forfeited. *Eberhardt*, 2024 IL App (1st) 230139, ¶ 60.

¶ 44                           E. Evidence Supporting Liability

¶ 45    Ervin's next argument is that the trial court disregarded medical records and affidavits supporting his claims, constituting "reversible error." Ervin claims that the trial court dismissed this case "without addressing" the evidence or "making findings as to its probative value." In support of these contentions, Ervin cites to several pages in the record. The record cites correlate with his initial complaint and his brief opposing a motion to dismiss filed by another defendant in the underlying case, Advocate South Suburban Hospital. It is unclear what evidence in the case against Straw he believes the trial court ignored. Accordingly, because this issue has not been properly presented to for review by this court, it is forfeited. *Eberhardt*, 2024 IL App (1st) 230139, ¶ 60; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("references shall be made to the pages of the record on appeal where evidence may be found.").

¶ 46                           F. Dismissal with Prejudice

¶ 47    As a final matter, we briefly address Ervin's argument that the trial court "lacked the authority" to dismiss the first amended complaint with prejudice. A litigant does not have an absolute right to amend under section 2-615 of the Code and we will not disturb a trial court's decision dismissing a complaint with prejudice absent an abuse of discretion. *Hume & Liechty Veterinary Associates v. Hodes*, 259 Ill. App. 3d 367, 370 (1994). In exercising its discretion, the trial court may consider the ultimate efficacy of the claim and whether the plaintiff had prior opportunities to amend. *Id*. Here, because Ervin's first amended complaint failed to state a cognizable claim against Straw, Ervin cannot prove any set of facts that would entitle him to relief. Further, Ervin failed to tender a proposed amended complaint to the circuit court, which forfeits his right to review of the trial court's denial of a request for leave to amend. *Firebirds International, LLC v. Zurich American Insurance Company*, 2022 IL App (1st) 210558, ¶ 43.

¶ 48    Additionally, the court did not "convert" the dismissal of the complaint without prejudice to one with prejudice, as Ervin argues. Rather, the record reflects that, upon Straw's motion, on November 20, 2024, the court dismissed Ervin's initial complaint without prejudice and gave him leave to replead. Ervin did so and filed a first amended complaint. After Straw filed another motion to dismiss, the court then dismissed the first amended complaint with prejudice, finding that Ervin did not and could not state any claims against Straw. Thus, we reject Ervin's argument and find that in these circumstances, the trial court's decision to dismiss Ervin's complaint with prejudice was not an abuse of discretion. *Hume & Liechty*, 259 Ill. App. 3d at 370.

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 51    Affirmed.